**JAMIE LYNN GALLIAN**
**16222 MONTEREY LANE UNIT 376**
**HUNTINGTON BEACH, CA 92649**
**(714)321-3449**
**JAMIEGALLIAN@GMAIL.COM**

## UNITED STATES BANKRUPTCY COURT

### CENTRAL DISTRICT-SANTA ANA DIVISION

| | |
|---|---|
| **IN RE JAMIE LYNN GALLIAN** | **Case No.: 8:24-BK-12267-SC** |
| **DEBTOR** | **NOTICE OF LODGMENT:** |
| | **DECLARATION OF JAMIE LYNN GALLIAN IN SUPPORT OF OPPOSITION TO CONTEMPT OF COURT FOR VIOLATION OF THE AUTOMATIC STAY §363, CASE NO 8:21-BK-11710-SC.** |

**TO SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE; CHAPTER 7 TRUSTEE, JEFFREY I. GOLDEN; UNITED STATES TRUSTEE, AND TRUSTEE'S COUNSEL OF RECORD**

I, JAMIE LYNN GALLIAN, DECLARE, under penalty of perjury the following to be true and correct. If called upon to testify, I could and would provide the truthful facts as stated in this declaration.

I believe I did not knowingly and willingly violate the automatic stay. I believe I am unclear as to the Bankruptcy Court's Findings of Fact, whether the Space 376 Skyline manufactured home is property of the debtors estate. The Courts findings of fact, *docket 387, Page 6, Lines 7-19, still say it is not as of the petition date.* I have had numerous discussions with

DECLARATION OF JAMIE LYNN GALLIAN IN SUPPORT OF OPPOSITION TO CONTEMPT OF COURT FOR VIOLATION OF THE AUTOMATIC STAY §363.DATE: OCTOBER 15, 2024TIME: 11:00 AM411 W. FOURTH STREET, 5CSANTA ANA, CA 92701 - 1

the Trustee and his counsel as late as Friday, September 13, 2024, and again through several text messages.  I have told the Trustee and his counsel, I will cooperate with the Trustee's Brokers at all times.

Based on my review of the Reporter Transcript dated August 27, 2024,1:30 pm Case No. 8:21-bk-11710-SC, hearing, and other documents, I was wrong in listing the Space 376 Skyline personal property manufactured home for sale with my broker, when title to the Space 376 Skyline personal property manufactured home property belonged to the bankruptcy estate, In re Jamie Lynn Gallian, Case No. 8:21-bk-11710-SC.

The Court was gracious enough to pause and explain to this In Pro Per Debtor, my homestead exemption interest was safe.

Debtor's homestead exemption granted by the Honorable Erithe A. Smith, United States Bankruptcy Judge, entered December 19, 2022, Memorandum Of Decision, (*docket no. 273),* and  Order Granting Debtor's Motion For Reconsideration determined that Debtor was entitled to an Automatic Homestead in the Property in the amount of $600,000, entered December 19, 2022 *(docket no. 274).*  On or about December 23, 2022, Houser Bros Co appealed from the Order Granting the Motion for Reconsideration to the United States District Court. (*docket no. 280).*

On or about November 1, 2023, the District Court handling the appeal entered an order that reversed and remanded the Order Granting the Motion for Reconsideration on the grounds that the Court failed to issue findings regarding the Debtor's interest in the Property "including whether "Gallian ever acquired (and retained) an equitable interest in the Property" (the "Reconsideration Order") (*docket no. 387*).  The Court did not alter its original finding that on

DECLARATION OF JAMIE LYNN GALLIAN IN SUPPORT OF OPPOSITION TO CONTEMPT OF COURT FOR VIOLATION OF THE AUTOMATIC STAY §363.DATE:  OCTOBER 15, 2024TIME:  11:00 AM411 W. FOURTH STREET, 5CSANTA ANA, CA 92701 - 2

the Petition Date July 9, 2021, the Registered Owner of the Space 376 Skyline Custom Villa manufactured home was J- Sandcastle Co, LLC ("J-Sandcastle) and the Legal Owner(s) were Ronald J. Pierpont [or] J-Pad, LLC. The Court determined Debtor was not on title to the Space 376 Skyline Custom Villa manufactured home on the Petition Date.

On May 15, 2024, Honorable Erithe A. Smith, United States Bankruptcy Judge, entered The Remand Order again found "that Debtor held a sufficient equitable interest in the Property to claim an automatic homestead exemption under Cal. Civ Proc. Code §704.720(a). (the "Remand Order") *(docket no. 393).*

However, the Orders cited about entered by the Honorable Erithe A. Smith, does not remove the Space 376 Skyline personal property manufactured home from the Estate of Jamie Lynn Gallian.  On I previously made a Motion compelling the trustee to abandon the Space 376 Skyline personal property manufactured home, and at the time the motion was made, the Houser Bros. Appeal to the United States District Court was pending removing this court's jurisdiction and ability to rule on the Motion.  The Court denied the motion.

The trustee asserts there is value in the Space 376 Skyline personal property manufactured home, that he can obtain through a sale of the estate's interest in the Space 376 Skyline personal property manufactured home.

At the August 27, 2024 hearing, continued from approximately July 29, 2024, due to the illness of Debtor having Covid 19.  There were two motions on calendar.  One was a motion filed by you that was denied as moot.

The second motion by the trustee requesting authority to list the Space 376 Skyline personal property manufactured home for sale.

DECLARATION OF JAMIE LYNN GALLIAN IN SUPPORT OF OPPOSITION TO CONTEMPT OF COURT FOR VIOLATION OF THE AUTOMATIC STAY §363.DATE:  OCTOBER 15, 2024TIME:  11:00 AM411 W. FOURTH STREET, 5CSANTA ANA, CA 92701 - 3

Your Honor asked the Debtor if there was any reason he should not grant the Trustee's motion for sale of Space 376 Skyline personal property manufactured home.

The correct answer Your Honor should have been "No, Your Honor, go ahead and grant the Trustee's Application on August 27, 2024.

At this point I believe the trustee's attorney asserted that by hiring Mr. Arroyo, from AMH American Manufactured Homes in marketing the Space 376 Skyline personal property manufactured home, I was interfering with the trustee's efforts to sell the property. I.e., you were interfering with the administration of the Space 376 Skyline personal property manufactured home by the trustee, a violation of the automatic stay, section 362.

I see now that my efforts were contradictory to the trustee's motion to hire his own choice of broker, and my efforts were seen as being resistant to the Trustee's ideas, duties and interfering with the process and procedures the Trustee must complete.

Your Honor, Clarkson, I have only the upmost respect of the United States Bankruptcy Court System, its Judges, and Officers of the Court. I apologize for my ignorance of the policies and procedures and my incessant questions to the Court, and lack of legal knowledge. It is my own personal failure that I have not been successful in securing attorney to work with me.

If order to avoid being held in contempt by this Honorable court, I promptly contacted Mr. Joseph Arroyo, the broker from AMH, as stated to your honor at the hearing of August 27, 2024; and requested the listing be removed from the MH Village website. Mr. Arroyo and I agreed to cancel my Listing Agreement and cease all efforts to market the Space 376 Skyline manufactured home as requested by the Trustee. With regards to my personal FSBO listing with Zillow.com, as soon as I left the Bankruptcy Court parking lot on 8/27/2024, I cancelled and

DECLARATION OF JAMIE LYNN GALLIAN IN SUPPORT OF OPPOSITION TO CONTEMPT OF COURT FOR VIOLATION OF THE AUTOMATIC STAY §363.DATE: OCTOBER 15, 2024TIME: 11:00 AM411 W. FOURTH STREET, 5CSANTA ANA, CA 92701 - 4

removed my account from Zillow.com, the Space 376 manufactured home listing and have

removed all of the pictures from the listing with Zillow.com I personally created.

You have my word to this Honorable Court and the Chapter 7 Trustee, I will not

interfere with the trustee's efforts and his broker's attempts to market and sell the Space 376

Skyline personal property manufactured home, and I will agree to cooperate with the broker's

efforts to market and the property upon the broker and his representatives providing 24 hours

notice, by positive cell phone contact, with Ms. Gallian, cell phone @ 714-321-3449, of any

broker or real estate agent's request to view and show the home to prospective purchasers as

agreed upon at the August 27, 2024 hearing with Your Honor.

**DATED THIS 24TH DAY OF SEPTEMBER, 2024, AT HUNTINGTON**

**BEACH, CA, COUNTY OF ORANGE.**

/S/  JAMIE LYNN GALLIAN

**DECLARATION OF JAMIE LYNN GALLIAN:**

**REQUEST FOR JUDICIAL NOTICE**

1.      A true and correct copy of relevant pages 1-11, of Docket 395 Filed 7/1/2024 is

attached to the Declaration of Jamie Lynn Gallian.

2.      A true and correct copy Reporter's Transcript Heating 9/22/22, Docket 306, Filed

1/24/2023 is attached to the Declaration of Jamie Lynn Gallian.

3.      A true and correct copy Memorandum of Decision, Docket 273 Filed 12/19/2022

is attached to the Declaration of Jamie Lynn Gallian.

DECLARATION OF JAMIE LYNN GALLIAN IN SUPPORT OF OPPOSITION TO CONTEMPT OF COURT
FOR VIOLATION OF THE AUTOMATIC STAY §363.DATE:  OCTOBER 15, 2024TIME:  11:00 AM411 W.
FOURTH STREET, 5CSANTA ANA, CA 92701 - 5

4.      A true and correct copy Order Granting Debtor's Motion For Reconsideration, Docket 274 Filed 12/19/2022 is attached to the Declaration of Jamie Lynn Gallian.

5.      A true and correct copy Remand Order, Docket 387 Filed 05/15/2024 is attached to the Declaration of Jamie Lynn Gallian.

6.      A true and correct copy State of California Department of Housing and Community Development CERTIFICATE OF TITLE, Registered Owner Lisa T. Ryan, issued September 10, 2014, is attached to the Declaration of Jamie Lynn Gallian.

7.      A true and correct copy State of California Department of Housing and Community Development CERTIFICATE OF TITLE, Registered Owner J-Sandcastle Co LLC, issued January 18, 2019, is attached to the Declaration of Jamie Lynn Gallian.

8.      A true and correct copy State of California Department of Housing and Community Development CERTIFICATE OF TITLE, Registered Owner Lisa T. Ryan, issued September 10, 2014, is attached to the Declaration of Jamie Lynn Gallian.

9.      A true and correct copy State of California Department of Housing and Community Development CERTIFICATE OF TITLE, Registered Owner J-Sandcastle Co. LLC, LEGAL OWNER(S) Ronald J. Pierpont [or] JPad LLC issued February 24, 2021, is attached to the Declaration of Jamie Lynn Gallian.

10.      A true and correct copy State of California Department of Housing and Community Development NOTICE OF SALE FEBRUARY 25, 2021, is attached to the Declaration of Jamie Lynn Gallian.

11.      A true and correct copy State of California Department of Housing and Community Development July 27, 2021, TITLE SEARCH Registered Owner Jamie Lynn

DECLARATION OF JAMIE LYNN GALLIAN IN SUPPORT OF OPPOSITION TO CONTEMPT OF COURT FOR VIOLATION OF THE AUTOMATIC STAY §363.DATE:  OCTOBER 15, 2024TIME:  11:00 AM411 W. FOURTH STREET, 5CSANTA ANA, CA 92701 - 6

0006

Gallian, LEGAL OWNER(S) Ronald J. Pierpont [or] JPad LLC, as of February 25, 2021, is

attached to the Declaration of Jamie Lynn Gallian.

12.     A true and correct copy State of California Department of Housing and

Community Development LIEN SATISFIED LIENHOLDERS CERTIFICATION EXECUTED

JULY 9, 2021, Signature if Legal Owner Ronald J. Pierpont is attached to the Declaration of

Jamie Lynn Gallian. There is no Secured Lien on the Space 376 Skyline Personal Property

collateral, LBM 1081 defined in the Security Agreement executed by and between Jamie Lynn

Gallian, (the "Lender/Holder") and J-Sandcastle Co. ("Borrower").  Certificate of Title Legal

Owner was registered to Jamie Lynn Gallian. There can be no lien against Jamie Gallian's

personal property without the Certificate of Title reflecting otherwise.

13.     A true and correct copy State of California Department of Housing and

Community Development CERTIFICATE OF TITLE, Registered Owner Jamie Lynn Gallian

issued August 3, 2021, is attached to the Declaration of Jamie Lynn Gallian.

14.     A true and correct copy State of California Department of Housing and

Community Development CERTIFICATE OF TITLE, Registered Owner Jamie Lynn Gallian,

Legal Owner, JPAD LLC, issued August 12, 2021, is attached to the Declaration of Jamie Lynn

Gallian.  HCD removed the Legal Owner JPad, LLC based upon the 7/9/2021, Lien Satisfied

Certification.  A Statement of Error was submitted to HCD, explaining the member error.

15.     A true and correct copy State of California Department of Housing and

Community Development CERTIFICATE OF TITLE, Registered Owner Jamie Lynn Gallian,

issued August 9, 2024, is attached to the Declaration of Jamie Lynn Gallian.

DECLARATION OF JAMIE LYNN GALLIAN IN SUPPORT OF OPPOSITION TO CONTEMPT OF COURT
FOR VIOLATION OF THE AUTOMATIC STAY §363.DATE: OCTOBER 15, 2024TIME:  11:00 AM411 W.
FOURTH STREET, 5CSANTA ANA, CA 92701 - 7

16.    A true and correct copy State of California Department of Housing and Community Development LIEN SATISFIED LIENHOLDERS CERTIFICATION EXECUTED JULY 9, 2021, Signature if Legal Owner Ronald J. Pierpont is attached to the Declaration of Jamie Lynn Gallian.

17.    A true and correct copy Order To Show Cause filed by Aaron E. d Leest, Danning, Gill, Israel, & Krasnoff, July 18, 2024, is attached to the Declaration of Jamie Lynn Gallian.

18.    A true and correct copy Letter dated July 18, 2024, to Joseph Arroyo, Broker American Manufactured Homes, regarding Broker listing of Space 376 Skyline Custom Villa Manufactured Home, emailed by Eric P. Israel, Esq. Trustee's Attorney, Danning, Gill, Israel, & Krasnoff, SEPTEMBER 12, 2024, is attached to the Declaration of Jamie Lynn Gallian.

19.    A true and correct copy Reporter's Transcript of Court Hearing August 27, 2024, is attached to the Declaration of Jamie Lynn Gallian.

20.    A true and correct copy pertinent pages 1-2; Declaration of Jamie Lynn Gallian Pages 16- 34, of *docket 208, filed August 30, 2022,* Debtor's Opposition to Application of The Chapter 7 Trustee to Employ Real Estate Broker, *docket 128,* is attached to the Declaration of Jamie Lynn Gallian.


I Declare under penalty of perjury, the foregoing documents are True and Correct. Dated this 24th day of September, 2024 at Huntington Beach, CA. County of Orange.

/s/ Jamie Lynn Gallian


DECLARATION OF JAMIE LYNN GALLIAN IN SUPPORT OF OPPOSITION TO CONTEMPT OF COURT FOR VIOLATION OF THE AUTOMATIC STAY §363.DATE:  OCTOBER 15, 2024TIME:  11:00 AM411 W. FOURTH STREET, 5CSANTA ANA, CA 92701 - 8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF JAMIE LYNN GALLIAN IN SUPPORT OF OPPOSITION TO CONTEMPT OF COURT
FOR VIOLATION OF THE AUTOMATIC STAY §363.DATE: OCTOBER 15, 2024TIME: 11:00 AM411 W.
FOURTH STREET, 5CSANTA ANA, CA 92701 - 9

1 | ERIC P. ISRAEL (State Bar No. 132426)
*eisrael@DanningGill.com*
2 | DANNING, GILL, ISRAEL & KRASNOFF, LLP
1901 Avenue of the Stars, Suite 450
3 | Los Angeles, California 90067-6006
Telephone:   (310) 277-0077
4 | Facsimile:   (310) 277-5735

5 | Attorneys for Jeffrey I. Golden,
Chapter 7 Trustee

**FILED & ENTERED**

**SEP 12 2024**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY bolte      DEPUTY CLERK**

6

7 | **UNITED STATES BANKRUPTCY COURT**

8 | **CENTRAL DISTRICT OF CALIFORNIA**

9 | **SANTA ANA DIVISION**

10

11 | In re | Case No. 8:21-bk-11710-SC

12 | JAMIE LYNN GALLIAN, | Chapter 7

13 | | **ORDER TO SHOW CAUSE WHY DEBTOR JAMIE LYNN GALLIAN AND JOSEPH ARROYO SHOULD NOT BE FOUND IN CONTEMPT OF COURT**

14 | Debtor.

15 | | Date:      August 27, 2024

16 | | Time:      1:30 p.m.
Place:     Courtroom "5C"

17 | | 411 W. 4th Street
Santa Ana, California 92701

18

19 |      On August 27, 2024, at 1:30 p.m., the Court conducted hearings in this case, at which the

20 | parties were present as noted on the record. The Court, having reviewed and considered the

21 | Trustee's Reply Memorandum of Points and Authorities in Support of Application to Employ Real

22 | Estate Broker Coldwell Banker Realty and Agents William Friedman and Greg Bingham Pursuant

23 | to 11 U.S.C. Sections 327 and 328 (*docket no. 408*), filed by Jeffrey I. Golden the Chapter 7 trustee

24 | herein (the "Trustee") , and the Debtor's statements on the record at the hearings on August 27,

25 | 2024, at 1:30 p.m., including that she and Joseph Arroyo had listed the manufactured home

26 | commonly known as 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, finds good

27 | cause to order as follows:

28

1

1        1.      Jamie Lynn Gallian ("Debtor") and Joseph Arroyo must appear and show cause as

2  to why they should not be held in contempt of Court and sanctioned for willfully violating the

3  Bankruptcy Code by exercising control over property of the estate, interfering with the Trustee's

4  administration of property of the estate and violating the automatic stay in Debtor's case.

5        2.      The hearing on this Order to Show Cause will take place on October 15, 2024, at

6  11:00 a.m. in Courtroom 5C located at 411 W. Fourth Street, Santa Ana, California 92701-4593.

7        3.      Jamie Lynn Gallian and Joseph Arroyo must file with the Court and serve on the

8  Trustee their written responses to this Order to Show Cause, if any, by no later than September 24,

9  2024.  Any response not timely filed may be deemed waived.

10        4.      The Trustee must file with the Court and serve on Jamie Lynn Gallian and Joseph

11  Arroyo any reply to their response(s) by not later than October 1, 2024.

12        5.      The Trustee is to serve a copy of this order upon Jamie Lynn Gallian and Joseph

13  Arroyo by no later than forty-eight hours after its entry and file an appropriate proof of service

14  within seventy-two hours.

15      **IT IS SO ORDERED.**

16

17                          ###

18

19

20

21

22

23

24  Date: September 12, 2024             Scott C. Clarkson
                                  United States Bankruptcy Judge

25

26

27

28

2



AARON E. DE LEEST
SENIOR COUNSEL

adeleest@DanningGill.com
www.DanningGill.com

1901 AVENUE OF THE STARS, SUITE 450
LOS ANGELES, CALIFORNIA 90067-6006

(310) 277-0077 – TEL
(310) 277-5735 – FAX

July 18, 2024

VIA EMAIL AND U.S. MAIL
*Josephamh@outlook.com*

Mr. Joseph Arroyo
977 S. Santa Fe Avenue
Suite 1
Vista, CA  92083

Re:    Jamie Lynn Gallian, Debtor

Dear Mr. Arroyo:

My firm represents Jeffrey I. Golden, as the Chapter 7 Trustee (the "Trustee"), for the bankruptcy estate of Jamie Lynn Gallian (the "Debtor"), Bankruptcy Case No. 8:21-bk-11710-SC (the "Bankruptcy Case").  A copy of the Notice of Bankruptcy Case Filing is enclosed.

The Trustee is informed that you have listed for sale at $539,000 the manufactured home located at 16222 Monterey Lane, Space #376, Huntington Beach, CA 92649 ("Property") for the Debtor.  A copy of the listing that we received today is enclosed.

Please be advised that, pursuant to 11 U.S.C. § 541(a), the Property is property of the Debtor's bankruptcy estate.  The Property cannot be sold without approval of the United States Bankruptcy Court in the Debtor's Bankruptcy Case and only the Trustee has authority to sell the Property, as the Trustee.  *See* 11 U.S.C. § 541(a) and 363(b).  Please be further advised that you have not been employed by the Trustee and/or authorized by the Bankruptcy Court to act as a broker or agent with respect to any sale of the Property.  *See* 11 U.S. Code § 327.

**Please immediately cease and desist all efforts to sell the Property and, no later than end of business today, July 18, 2024, remove and take down all listings, including on any website and multiple listing service, relating to the Property.**

**DANNING, GILL, ISRAEL & KRASNOFF, LLP**

Mr. Joseph Arroyo
July 18, 2024
Page 2


The Trustee reserves any and all of his rights and remedies against you in relation to any unauthorized transfer of the Property.

Sincerely,

*/s Aaron E. de Leest*

Aaron E. de Leest

cc:    Jeffrey I. Golden, Trustee (via email)
       Eric P. Israel, Esq. (via email)
       Jamie Lynn Gallian, Debtor

1   JEFFREY I. GOLDEN (State Bar No. 133040)
    *jgolden@go2.law*
2   3070 Bristol Street, Suite 640
    Costa Mesa, CA  92626
3   Telephone:  (714) 966-1000
    Facsimile: (714) 966-1002
4
    Chapter 7 Trustee
5

6   ERIC P. ISRAEL (State Bar No. 132426)
    *eisrael@DanningGill.com*
7   AARON E. DE LEEST (State Bar No. 216832)
    *adeleest@DanningGill.com*
8   DANNING, GILL, ISRAEL & KRASNOFF, LLP
    1901 Avenue of the Stars, Suite 450
9   Los Angeles, California 90067-6006
    Telephone: (310) 277-0077
10  Facsimile: (310) 277-5735

11  Attorneys for Jeffrey I. Golden, Chapter 7 Trustee

12
                    UNITED STATES BANKRUPTCY COURT
13
                    CENTRAL DISTRICT OF CALIFORNIA
14
                         SANTA ANA DIVISION
15

16  In re                                  Case No. 8:21-bk-11710-SC

17                                          Chapter 7

18  JAMIE LYNN GALLIAN,
                                            **TRUSTEE'S NOTICE OF APPLICATION
19                                          AND APPLICATION TO EMPLOY REAL
                                            ESTATE BROKER COLDWELL
20                          Debtor.         BANKER REALTY AND AGENTS
                                            WILLIAM FRIEDMAN AND GREG
21                                          BINGHAM PURSUANT TO 11 U.S.C. §§
                                            327 AND 328; MEMORANDUM OF
22                                          POINTS AND AUTHORITIES; AND
                                            DECLARATIONS OF WILLIAM
23                                          FRIEDMAN AND GREG BINGHAM AND
                                            REQUEST FOR JUDICIAL NOTICE IN
24                                          SUPPORT**

25                                          **[16222 Monterey Lane, Space #376,
                                            Huntington Beach, CA 92649]**
26

27                                          **DATE:    July 30, 2024 (Via ZoomGov)
                                            TIME:    11:00 a.m.
28                                          PLACE:  Courtroom "5C"**

---

1773193.1  27064                    1

**TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE; DEBTOR; AND PARTIES IN INTEREST:**

PLEASE TAKE NOTICE that on July 30, 2024, at 11:00 a.m., in Courtroom "5C" of the United States Bankruptcy Court for the Central District of California, located at 411 West Fourth Street, Santa Ana, California, Jeffrey I. Golden, the Chapter 7 trustee (the "Trustee") for the estate of Jaime Lynn Gallian (the "Debtor"), seeks an order authorizing him to employ real estate broker Coldwell Banker Realty and agents William Friedman and Greg Bingham as his real estate broker, at the expense of the estate (the "Application").

The application is based upon this notice of application, the attached application, the complete files and records of this case, the attached Statement of Disinterestedness, and upon such other evidentiary matters as may be presented to the Court.

**PLEASE TAKE FURTHER NOTICE** that any party seeking to oppose the Application must, not later than 14 days before the hearing date, file a written opposition with the Clerk of the Court and serve copies of the opposition upon the Trustee and Debtor's counsel and upon the Office of the United States Trustee, 411 West Fourth Street, Suite 7160, Santa Ana, CA 92701. Failure to file and serve oppositions as set forth above may be deemed consent to the relief sought in the motion. If you do not have any opposition to the motion and/or to approval of the Application, you need not take any further action.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1773193.1  27064

2

0015

1    **PLEASE TAKE FURTHER NOTICE THAT the hearing on the Application will be**

2    **conducted by the Court remotely using ZoomGov audio and video technology only.**

3    **Accessibility information will be provided by the Court in its tentative ruling prior to the**

4    **hearing and may be viewed online at online at:**

5        http://ecf-ciao.cacb.uscourts.gov/CiaoPosted/?jid=SC.

6
      DATED:  July 1, 2024                    DANNING, GILL, ISRAEL & KRASNOFF, LLP
7

8

9                                      By:    _____/s/ Aaron E. de Leest_____
10                                            AARON E. DE LEEST
                                              Attorneys for Jeffrey I. Golden, Chapter 7 Trustee
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1773193.1  27064                          3

**MEMORANDUM AND POINTS AND AUTHORITIES**

Jeffrey I. Golden, the Chapter 7 trustee ("Trustee") for the bankruptcy estate of Jamie Lynn Gallian (the "Debtor"), files this *Application of the Chapter 7 Trustee to Employ Real Estate Broker Coldwell Banker Realty and Agents William Friedman and Greg Bingham Pursuant to 11 U.S.C. §§ 327 and 328* ("Application").  In support of the Application, the Trustee submits the following memorandum of points and authorities and the attached declarations of William Friedman ("Friedman Declaration") and Greg Bingham ("Bingham Declaration").

**I.**

**STATEMENTS OF FACTS**

**A.      BANKRUPTCY BACKGROUND**

On July 9, 2021 ("Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code, including her bankruptcy schedules.

Jeffrey I. Golden was thereafter appointed the Chapter 7 trustee for the Debtor's estate and continues to serve in that capacity for the benefit of creditors.

On the Petition Date, the registered title owner of the manufactured home located at 16222 Monterey Lane, Space #376, Huntington Beach, California 92649 ("Property"), was vested in J-Sandcastle Co, LLC ("J-Sandcastle).  The Debtor was not on title to the Property on the Petition Date.

The Property was also subject to a consensual lien on the Property in favor of J-Pad, LLC ("J-Pad") in the amount of $225,000, plus interest, and other voluntary liens and transfers in favor of the Debtor's family members, ex-husband, and former roommate as discussed below.

**B.      THE HOMESTEAD EXEMPTION**

The Debtor claimed a homestead exemption in the Property in the amount of $600,000.

On or about May 12, 2022, Houser Bros. Co., dba Rancho Del Rey Mobile Home Estates ("Houser Bros."), filed its Motion Objecting to Debtor's Claimed Homestead Exemption (the "Exemption Motion") (*docket no. 95*).  The hearing on the Exemption Motion was held on June 2,

1  2022 and continued to July 21, 2022.  At the continued hearing, the Court granted the Exemption

2  Motion and disallowed any claim of exemption by the Debtor in the Property.

3           On or about July 26, 2022, the Debtor filed the Motion for Reconsideration from the

4  Court's July 21, 2022 ruling (the "Motion for Reconsideration") (*docket no. 157*).  The order

5  granting the Exemption Motion was thereafter entered on or about August 5, 2022 (*docket no. 177*).

6  The hearing on the Motion for Reconsideration was held on September 22, 2022, and the Court

7  took the matter under submission.

8           Thereafter, on or about December 19, 2022, the Court entered its order granting the

9  Debtor's Motion for Reconsideration and determined that the Debtor was entitled to a homestead

10  exemption in the Property in the amount of $600,000 ("Order Granting the Motion for

11  Reconsideration") (*docket no. 274*).

12           On or about December 29, 2022, Houser appealed from the Order Granting the Motion for

13  Reconsideration to the District Court (*docket no. 280*).

14           On or about November 1, 2023, the District Court handling the appeal entered an order that

15  reversed and remanded the Order Granting the Motion for Reconsideration on the grounds that the

16  Court failed to issue findings regarding the Debtor's interest in the Property "including whether

17  "Gallian ever acquired (and retained) an equitable interest in the Property" (the "Reconsideration

18  Order") (*docket no. 387*).

19           On or about May 15, 2024, the Court entered its order regarding the Reconsideration Order

20  (the "Remand Order ) (*docket no. 393*).  The Remand Order again found "that Debtor held a

21  sufficient equitable interest in the Property to claim an automatic homestead exemption under Cal.

22  Civ. Proc. Code § 704.720(a)."

23           Hauser did not pursue any further appeal from the Remand Order and it is now final.

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

1773193.1  27064                                        5

0018

**C.**      **PRIOR FILING OF APPLICATION TO EMPLOY REAL ESTATE**

                **BROKER**

On or about July 28, 2022, after the Debtor's exemption was disallowed at the hearing on July 21, 2022, the Trustee filed his Application to Employ Real Estate Broker Coldwell Banker Realty and Agents William Friedman and Greg Bingham Pursuant To 11 U.S.C. 327 and 328 (the "First Application") (*docket no. 162*) to assist the Trustee with marketing and selling the Property for the benefit of the estate and its creditors.

On or about September 28, 2022, the Court entered an order denying the Trustee's First Application, without prejudice, in light of the pending Motion for Reconsideration and need for the Trustee to address the various transfers of title and liens on the Property that needed to be avoided (*docket no. 241*). For the reasons set forth below, the Trustee now believes that he has addressed the issues raised by the Court and that the employment of a real estate broker is ripe for determination.

**D.**      **TRUSTEE'S AVOIDANCE AND RECOVERY OF TRANSFERS OF TITLE**

                **AND LIENS ON THE PROPERTY**

On or about June 30, 2023, the Trustee commenced an adversary proceeding, Adv. No. 8:23-ap-01064-SC, by filing a *Complaint: (1) to Avoid and Recover Fraudulent Transfers; (2) to Avoid and Recover Postpetition Transfers; (3) for Declaratory Relief; (4) for Breach of Contract; (5) for Money Had and Received; and (6) Unjust Enrichment* (the "Complaint") against Ronald J. Pierpont, J-Pad LLC, J-Sandcastle Co., LLC, Steven D. Gallian, Brian J. Gallian, Justin Barclay, Robert J. McLelland, and E. J. Gallian (collectively, the "Defendants").

         **1.**      **Stipulated Judgments**

Pursuant to stipulations with defendants Steven D. Gallian, Brian J. Gallian, Justin Barclay, E. J. Gallian (the "Family Defendants") (*adv. docket nos. 43*), a stipulated judgment was entered against the Family Defendants on or about October 3, 2023 (*adv. docket no. 47*). The judgment against the Family Defendants avoided the liens on the Property in favor of the Family Defendants.

1773193.1 27064

6

1    The judgment also preserved those liens for the benefit of the Debtor's estate pursuant to 11 U.S.C.

2    § 551.

3          Pursuant to a stipulation with defendant Robert J. McLelland (*adv. docket nos. 52*), a

4    stipulated judgment was entered against Mr. McLelland on or about March 29, 2024 (*adv. docket*

5    *no. 66*).  The judgment against Mr. McLelland also avoided his lien on the Property in favor of the

6    Family Defendants.  The judgment also preserved those liens for the benefit of the Debtor's estate

7    pursuant to 11 U.S.C. § 551.

8

9          **2.**      <u>**Default Judgments**</u>

10          Pursuant to motions for default judgment filed by the Trustee with respect to defendants J-

11    Pad, J-Sandcastle, and Ronald J. Pierpont (collectively, the "Defaulting Defendants") (*adv. docket*

12    *nos. 58, 59, and 76*), default judgments were entered against the Defaulting Defendants on or about

13    May 10, 2024 (*adv. docket nos. 79, 81 and 83*).

14          The default judgment against J-Sandcastle avoided and preserved the Debtor's transfers of

15    title of the Property to J-Sandcastle and recovered legal title to the Property and the beneficial

16    interest in the Property for the Debtor's bankruptcy estate in the name of the Trustee.

17          The default judgment against defendant J-Pad avoided J-Pad's lien on the Property in the

18    amount of $225,000 and other liens on the Property in favor of J-Pad.  The judgment also preserved

19    those liens for the benefit of the Debtor's bankruptcy estate pursuant to 11 U.S.C. § 551.

20          The default judgment against defendant Ronald J. Pierpont determined that Mr. Pierpont

21    does not have any interest in the Property and any valid, perfected, and/or unavoidable liens on the

22    Property.  It also avoided his liens on the Property and preserved those liens for the benefit of the

23    Debtor's estate pursuant to 11 U.S.C. § 551.

24

25          **3.**      <u>**Trustee's Ability to Sell Property**</u>

26          As a result of the above, title to the Property has been restored to the estate and the Property

27    is property of the estate.  In addition, the $225,000 consensual lien of J-Pad on the Property, and

28    the other consensual liens and interests on the Property in favor of the Family Defendants, Mr.

1773193.1 27064                                      7

1    Pierpont, and Mr. McLelland, have been avoided and preserved for the benefit of the Debtor's

2    estate in the Trustee's name.

3           Although the Debtor has claimed a homestead exemption in the Property, the allowed

4    amount of the Debtor's homestead is determined when the Property is sold, rather than being fixed

5    as of the date the Debtor filed bankruptcy. *Robertson v. Alsberg (In re Alsberg)*, 161 B.R. 680, 684

6    (B.A.P. 9th Cir. 1993), aff'd, 68 F.3d 312 (9th Cir. 1995).  Furthermore, the Debtor's exemption in

7    the Property only comes from equity following consensual liens, which liens include the J-Pad lien.

8    *See* Cal. Code Civ. P. § 703.010.  Exemptions may be claimed only against involuntary liens, such

9    as judgments, attachments, and execution liens, and then only if the procedures of section 522(f)

10   are followed.  *Id*.  Thus, the consensual liens on the Property come ahead of any allowed amount of

11   the Debtor's homestead exemption.  *See In re Roach,* 2019 WL 408628, at *3-5 (B.A.P. 9th  Cir.

12   Jan, 29, 2019); *see also In re Bunn-Rodemann*, 491 B.R. 132, 134-35 (Bankr. E.D. Cal. 2013).

13          The Trustee now believes, notwithstanding the Debtor's allowed homestead exemption, that

14   he is in a position to sell the Property for the benefit of the estate and creditors.  The Trustee's

15   interest in the Property, in light of the avoided and preserved consensual J-Pad lien in the amount

16   of $225,000, and any other consensual liens, is senior to the Debtor's homestead exemption and

17   any distribution from the sales proceeds must be paid to the Trustee first in connection with the

18   consensual liens, and prior to any amount that the Debtor may be entitled to in connection with her

19   homestead exemption.  For example, the avoided and preserved consensual J-Pad lien of $225,000,

20   plus interest, which amount with interest the Trustee calculates to be not less than $293,791.44, as

21   of June 6, 2024, at the contract interest rate of 5.5% (daily interest continues to accrue at $33.90 per

22   day) must be paid before the any other junior liens and the Debtor's homestead exemption.

23   Because most if not all of the sales proceeds will be exhausted by the consensual liens that the

24   Debtor recorded against the Property, including the J-Pad lien, it is anticipated that there will little

25   to no proceeds available to pay with respect to the Debtor's claim of exemption in the Property.

26   / / /

27   / / /

28   / / /

1773193.1  27064                              8

**II.**

**PROPOSED EMPLOYMENT OF REAL ESTATE BROKER AND AGENTS**

The Trustee has solicited the assistance of Coldwell Banker Realty, a licensed California real estate broker ("Broker"), and William Friedman and Greg Bingham (together, "Agents"), agents of the Broker, in determining the value of the Property.  Mr. Bingham has advised the Trustee that the fair market value of the Property is currently at or near $320,000.  *See* Bingham Declaration.

To facilitate the sale of the Property, the Trustee seeks to employ an experienced and reputable real estate broker and proposes to employ the Broker and the Agents pursuant to 11 U.S.C. §§ 327(a) and 328.  The Broker has agreed to advertise the Property, to market and show the Property, to represent the Estate in connection with the sale of the Property, and to advise the Trustee with respect to obtaining the best offer for the sale of the Property.

The terms of employment agreed to by the Trustee, subject to approval of the Court, as set forth in the residential listing agreement, manufactured home listing addendum, and addendum to exclusive authorization and right to sale (together, "Listing Agreement") attached as Exhibit 1, are as follows:

1.      The Broker will have an exclusive listing on the Property, and the listing price will be $320,000.  The Listing Agreement, including the listing price, may be modified by the Trustee in his sole discretion (except as to commission).  The listing and sale of the Property are subject to Bankruptcy Court approval, and any sale of the Property will be "as is," without any representations, guarantees or warranties of any kind, whether expressed or implied, by the Trustee.  Upon the presentation of an acceptable purchase offer for the Property, the Trustee will file a motion seeking court authority to sell the Property and pay the total broker's commission of six percent (6%) from the sale proceeds through escrow.  A commission shall be paid only if a sale of the Property actually closes by the Trustee.  The Trustee's motion will contain an overbid procedure.

2.      The Agents are informed and understand that no sale may be consummated until after notice and a hearing.  Further, the Agents are aware of the provisions of 11 U.S.C. § 328(a)

0022

and understand and accept that, notwithstanding the terms and conditions of employment and

compensation provided in the Listing Agreement, the Court may allow compensation different

from the compensation provided under such terms and conditions after the conclusion of such

employment, if such terms and conditions prove to have been improvident in light of developments

not capable of being anticipated at the time of the fixing of such terms and conditions.

The Agents are well qualified to represent the Trustee and the Estate in connection with the

marketing and sale of the Property.  Their profiles are attached collectively as Exhibit 2.

**III.**

**THE BROKER AND AGENTS CAN BE EMPLOYED PURSUANT TO 11 U.S.C.§ 327(a)**

Pursuant to 11 U.S.C. § 327(a), a trustee may employ attorneys and other professional

persons who do not hold or represent an interest adverse to the estate, and who are disinterested

persons, to represent or assist the trustee in carrying out the trustee's duties.

The Trustee has previously employed the Broker and the Agents in cases that are unrelated

to the Debtor's case.  David M. Goodrich, a partner in the Trustee's firm, has also employed the

Broker and William Friedman in other cases not involving the Debtor.  In addition, Danning, Gill,

Israel & Krasnoff, LLP, the Trustee's general counsel, and attorney-trustees at that firm, have

worked with and retained the Broker and Agents in other cases not involving the Debtor.

Except as provided above, to the best of the Trustee's knowledge, and based upon the

attached Friedman and Bingham Declarations, the Broker and the Agents:

1.     have no connection with the Debtor, the Debtor's principals, insiders,

creditors, the Trustee, or any other party in interest, or their respective attorneys and accountants, or

any person employed in the Office of the United States Trustee;

2.     are not creditors, equity security holders or insiders of the Debtor;

3.     are not and were not, within two years before the date of the filing of the petitions,

directors, officers, or employees of the Debtor;

4.     do not represent an individual or entity with an interest adverse to the Estate;

5.     are not related to the United States Trustee or to the Bankruptcy Judge assigned to

this case;

1      6.     are disinterested within the meaning of 11 U.S.C. §§ 327(a) and 101(14);

2      7.     do not have any fee sharing arrangement, understanding or compensation sharing

3 arrangement with any other entity, except for the customary division of the commission from the

4 sale of a property between the listing broker and the selling broker, as provided for in the Listing

5 Agreement; and

6      8.     will not receive a retainer in this case.

## IV.

## CONCLUSION

The Trustee believes the employment of the Broker and the Agents on the terms and conditions provided herein is in the best interest of the Trustee and the Debtor's estate.

WHEREFORE, the Trustee prays that the Application be approved and he be authorized to employ the Broker and the Agents, as an expense of the Estate, to market and sell the Property upon the terms and conditions set forth herein and in the Listing Agreement, and that he be authorized to execute the Listing Agreement attached hereto and any and all other ancillary documents necessary to list the Property for sale, and to modify and extend the listing (except not to increase the commission) in his sole discretion without further Court order. The Trustee further prays for all other and further relief.

DATED: June 28, 2024

Jeffrey I. Golden, Chapter 7 Trustee

SUBMITTED BY:

DATED: July 1, 2024     DANNING, GILL, ISRAEL & KRASNOFF, LLP


By:     /s/ Aaron E. de Leest
      AARON E. DE LEEST
      Attorneys for Jeffrey I. Golden,
      Chapter 7 Trustee

1773193.1  27064

0024

1

2

3

4

5

6

7



8            **UNITED STATES BANKRUPTCY COURT**

9             **CENTRAL DISTRICT OF CALIFORNIA**

10                  **SANTA ANA DIVISION**

11

12  In re                                    Chapter 7

13  JAMIE LYNN GALLIAN,
                                             Case No. 8:21-bk-11710-SC
14

15             Debtor.                       **MEMORANDUM OF DECISION
                                             REGARDING DEBTOR'S MOTION FOR
                                             RECONSIDERATION OF THE COURT'S
16                                           AUGUST 5, 2022 ORDER SUSTAINING
                                             OBJECTION TO DEBTOR'S
17                                           HOMESTEAD EXEMPTION**

18                                           Date:    September 22, 2022
                                             Time:    10:00 a.m.
19                                           Place:   Courtroom 5A – via zoom

20

21         On July 26, 2022, Jamie Lynn Gallian ("Debtor") filed "Debtors [sic] Notice of and

22  Motion for Reconsideration of 7.21.22 Order Sustaining Houser Bros. Co. DBA Rancho

23  Del Rey Mobile Home Estates [sic] Objection to Debtor's Claimed Homestead Exemption

24  and Joinder Parties Huntington Beach Gables HOA; Janine Jasso" [dkt # 157] (the

25  "Motion"). Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates ("Houser Bros")

26  filed a "Response to Debtor's Notice of and Motion for Reconsideration of 7.21.22 Order

27  Sustaining Houser Bros. Co. DBA Rancho Del Rey Mobile Home Estate's [sic] Objection

28

FILED & ENTERED

DEC 19 2022

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY mccall    DEPUTY CLERK

1  to Debtor's Claimed Homestead Exemption" [dkt # 170] (the "Response") on August 4,

2  2022. Jeffrey Golden, the Chapter 7 Trustee ("Trustee"), filed "Trustee's Joinder in

3  Houser Bros. Co. DBA Rancho Del Rey Mobile Home Estates' Response to Debtor's

4  Notice of and Motion for Reconsideration of 7.21.22 Order Sustaining Houser Bros. Co.

5  DBA Rancho Del Rey Mobile Home Estate's [sic] Objection to Debtor's Claimed

6  Homestead Objection" [dkt 171] (the "Trustee's Joinder") on August 4, 2022. Also on

7  August 4, 2022, the Huntington Beach Gables Homeowners Association (the "HOA") filed

8  "The Huntington Beach Gables Homeowners Association's Joinder to Houser Bros. Co.

9  dba Rancho Del Rey Mobile Home Estates' Response to Debtor's Motion for

10  Reconsideration" [dkt #173] (the "HOA Joinder"). Debtor filed a "Reply to Houser Bros Co

11  DBA Rancho Del Rey MobileHome [sic] Estates [sic] Opposition to Debtors [sic[ Motion

12  for Consideration [sic] of 7/21/22 Order Sustaining Houser Bros Co DBA Rancho Del Rey

13  Mobilehome [sic] Estates [sic] Objection to Debtor's Claimed Homestead Exemption" [dkt

14  #185] (the "Reply").  The Motion initially came on for hearing before the Honorable Erithe

15  A. Smith on August 18, 2022 at 10:30 a.m. The hearing was subsequently continued to

16  September 22, 2022 for further oral argument.  Appearances were made as noted on the

17  Court's record. After the hearing, the matter was taken under advisement.[1]

18                          Procedural Background

19          On May 12, 2022, Houser Bros filed a "Motion Objecting to Debtor's Claimed

20  Homestead Exemption" ("Homestead Motion"). Dkt. 95.  Joinders to the Homestead

21  Motion were filed by the HOA, creditor Janine Jasso ("Jasso"), and chapter 7 trustee

---

[1] This case was transferred to the Honorable Scott Clarkson on September 1, 2022 due to the retirement of the undersigned, Judge Erithe Smith, on October 29, 2022. However, as Judge Smith issued the underlying order sustaining Trustee's objection to Debtor's homestead exemption, presided over the hearing on Debtor's instant motion for reconsideration, and continues to serve as a recalled bankruptcy judge, she has authority and jurisdiction to rule on this motion for reconsideration.

0026

1   Jeffrey Golden ("Trustee")[2] (collectively, the "Joining Parties"). Dkts. 98, 100. The

2   Homestead Motion was set for hearing on June 2, 2022, at 10:30 a.m. Dkt. 99. Debtor

3   filed a late opposition to the Homestead Motion ("Homestead Opposition") on June 1,

4   2022, just one day prior to the hearing. Dkt. 105.

5       On June 2, 2022, the Court conducted a hearing on the Homestead Motion

6   and continued the hearing to July 21, 2022  in order to allow the Joining Parties to

7   respond to Debtor's late-filed Homestead Opposition.  On June 23, 2022, the Court

8   entered its "Order Continuing Hearing on Motion Objecting to Debtor's Claimed

9   Homestead Exemption" ("June 23, 2022 Order"), which attached a copy of the

10  Court's tentative ruling for the hearing on June 2, 2022. Dkt. 124. The June 23,

11  2022 Order provided that the hearing on the Homestead Motion was continued to

12  July 21, 2022, at 10:30 a.m. to allow Houser Bros and the Joining Parties to file

13  replies to Debtor's late opposition by July 7, 2022 and that no further pleadings

14  were to be filed regarding the Motion. Dkt. 124.

15

16

17      Timely reply briefs were filed by Houser Bros and the HOA. Dkts. 129, 130,

18  131, 132, 133. On July 8, 2022, Debtor filed an unauthorized "Reply to Greg

19  Buysman, CA Notary Public Commission Number 2341449; Owner & Operator the

20  UPS Store, Edinger/Springdale." Dkt. 134.

21

22      The Court held a continued hearing on the Homestead Motion on July 21,

23  2022, at which time it orally granted the same for the reasons stated in its posted

24  tentative ruling. That same day, on July 21, 2022, Debtor filed a "Notice of

25  Lodgment of Orange County Tax Assessors [sic] Proof of Debtors [sic] Homestead

26  Exemption Effective 2/25/2021 in Support of Opposition to Motion Objecting to

27

28  _____

[2] Trustee's joinder was not filed until June 30, 2022. Dkt. 128.

3

Claimed Homestead Exemption" ("First NOL"). Dkt. 139. Later that same day, Debtor

also filed a "Notice of Lodgment of Orange County Tax Assessors [sic] Proof of Debtors

[sic] Homestead Exemption Effective 2/25/2021 in Support of Opposition to Motion

Objecting to Claimed Homestead Exemption" ("Second NOL"). Dkt. 140. Finally, on July

21, 2022,  Debtor filed a "Notice of Appeal and Statement of Election" ("Notice of

Appeal") regarding a "7/21/2022 Order Denying Debtors [sic] Declared Homestead and

Debtors [sic] Homeowners Exemption Effective February 25, 2021 with the Orange

County Tax Assessor Pursuant to California Department of Housing and Community

Development Certificate of Title Perfected February 25, 2021." Dkt. 143. Debtor's appeal

was referred to the Bankruptcy Appellate Panel based on Debtor's election. Dkt. 161.

However, the Court's "Order Granting Houser Bros. Co. dba Rancho Del Rey Mobile

Home Estates's Motion Objecting to Debtor's Claimed Homestead Exemption in 16222

Monterey Lane, Space 376, Huntington Beach, CA 92649" ("Homestead Order") was not

entered until August 5, 2022. Dkt. 177.

On July 26, 2022, Debtor filed the Motion. Dkt. 157.  Shortly thereafter, on August

1, 2022, Debtor filed a "Motion for Leave from the Bankruptcy Appeal [sic] Panel to

Permit the Bankruptcy Court to Consider Debtor's Motion for Re-Consideration [dkt. 157]

on August 18, 2022." Dkt. 167. The following day, on August 2, 2022, Houser Bros filed

an "Optional Appellee Statement of Election to Proceed in District Court." Dkt. 168. A

Notice of Transfer of Appeal to District Court was filed on the docket by the Debtor on

August 8, 2022. Dkt. 180. Debtor also filed a Notice Regarding Appeal From Bankruptcy

Court that was entered on August 11, 2022. Dkt. 184.  Ultimately, the District Court Case,

no. 8:22-cv-1462-RGK was dismissed by Debtor, thereby eliminating any issue regarding

this Court's jurisdiction over the Motion. *See* Dkt. 215.

0028

1    <u>Standards for Relief Under Federal Rules of Civil Procedure 59(e) and 60(b)</u>

2    Federal Rules of Civil Procedure (FRCP) 59(e) and 60(b) are applicable to

3    bankruptcy cases pursuant to Federal Rules of Bankruptcy Procedure 9023 and

4    9024 respectively.

5    A motion brought under FRCP 59 involves reconsideration on the merits and

6    generally should not be granted unless it is based on at least one of the following

7    grounds: (1) to correct manifest errors of law or fact upon which the judgment is based;

8    (2) to allow the moving party the opportunity to present newly discovered or previously

9    unavailable evidence; (3) to prevent manifest injustice; or (4) to reflect an intervening

10    change in controlling law.  *In re Oak Park Calabasas Condominium Ass'n*, 302 B.R. 682,

11    683 (Bankr.C.D.Cal.2003), *citing McDowell v. Calderon,* 197 F.3d 1253, 1255 (9th

12    Cir.1999), *cert. denied,* 529 U.S. 1082, 120 S.Ct. 1708, 146 L.Ed.2d 511 (2000) (cit.

13
14    omitted).  The term "manifest error" is "an error that is plain and indisputable, and that

15    amounts to a complete disregard of the controlling law or the credible evidence in the

16    record." *Oak Park* at 783.  A "manifest injustice" is defined as "an error in the trial court

17    that is direct, obvious, and observable, such as a defendant's guilty plea that is

18
19    involuntary or that is based on a plea agreement that the prosecution rescinds."  *Id.*

20    A motion brought under FRCP 59 "may seek a reconsideration of the

21    correctness and merits of the trial court's underlying judgment."  *In re Wylie*, 349

22    B.R. 204, 209 (9th Cir. BAP 2006).  A motion based on FRCP 59 may not be used

23    "to raise arguments or present evidence for the first time when they could

24    reasonably have been raised earlier in the litigation." *Kona Enters., Inc. v. Estate*

25    *of Bishop,* 229 F.3d 877, 890 (9th Cir.2000). Further, such a motion may not be

26    used to present a new legal theory for the first time, to raise legal arguments which

27
28

0029

could have been raised in connection with the original motion, or "to rehash the same arguments presented the first time or simply express the opinion that the court was wrong." *In re JSJF Corp.,* 344 B.R. 94, 103 (9th Cir. BAP 2006), *aff'd and remanded*, 277 Fed.Appx. 718 (9th Cir. 2008).

Under FRCP 60(b), a party may seek relief from a final judgment or order on the following enumerated grounds: 1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

<u>Factual Background</u>

This matter involves a dispute over Debtor's claimed homestead exemption in the manufactured home located at 16222 Monterey Lane, Unit 376, Huntington Beach, CA (the "Property"). The underlying facts are complex and are set forth in the pleadings filed in connection with the Homestead Motion and the instant Motion and are incorporated herein by reference. However, due to the narrow scope of this Memorandum, such facts will not be fully discussed except as relevant to the Court's findings and conclusions.

The pleadings filed in connection with the Homestead Motion focused primarily on whether Debtor had an ownership interest in the Property as of the petition date, i.e., July 9, 2021. It is undisputed that shortly after the acquisition of the Property in November 2018, its registered owner was J-Sandcastle LLC ("Sandcastle"), an entity wholly owned by Debtor. Thereafter, Ron Pierpont and J-Pad LLC were added as the Property's legal

0030

owners. According to Debtor, Sandcastle's interest in the Property was transferred to her on February 21, 2021; according to Houser Bros the transfer did not occur and/or did not become effective until *after* July 9, 2021. In her opposition to the Homestead Motion, Debtor argued, among other things, that she qualified for the automatic homestead exemption permitted under California law because she had continuously resided on the Property as her principal residence since 2018 to the present. Debtor's Opposition to Homestead Motion at pp.15, 20. Dkt. 105. There was no evidence presented by the Joining Parties that disputed Debtor's residency claim.

Oral argument at the hearing on the Homestead Motion also focused on the issue of ownership as of the filing of the bankruptcy petition. Indeed, the Court's ruling on the Homestead Motion exclusively relied on matters relating to ownership, as reflected in the following excerpts from the Homestead Order:

> In In re *Shaefers*[3], the Ninth Circuit BAP found that a Chapter 7 debtor cannot claim homestead exemption in limited liability company (LLC) that he owned, which owned real property at which debtor resided; debtor did not identify any beneficial or equitable interest in the property, and LLC members such as debtor had no interest in the company's assets, rather, debtor's interest in LLC was a personal property interest outside the statutory definition of a homestead. 623 B.R. 777 (B.A.P. 9th Cir. 2020).
>
> Here, Debtor has failed to meet her burden that the Property is subject to exemption. First, the HCD records show that J-Sandcastle LLC, not Debtor, was the Property's owner of record on the Petition Date. As of June 7, 2021— about a month before the Petition Date—the Property's registered owner was J-Sandcastle LLC, and the legal owners were Pierpont and J-Pad LLC. Hays Decl., Ex. 17 at 142. The HCD webpage indicates that "documents and fees" must be submitted to the HCD to

---

[3] *In re Shaefers* was subsequently vacated by the Ninth Circuit on August 31, 2022 due to the dismissal of the bankruptcy case. *In re Shaefers* ("*Schaefers II*"), 2022 WL 3973920, at *1 (9th Cir. Aug. 31, 2022) (vacating decision). The BAP decision therefore has "no precedential authority whatsoever." *See O'Connor v. Donaldson*, 422 U.S. 563, 578 n. 2, 95 S.Ct. 2486, 2495 n. 2, 45 L.Ed.2d 396 (1975) . It's availability for citation for any purpose is, therefore, uncertain. In any event, the Court notes that 1) in *Shaefers*, the debtor asserted an interest in the LLC itself and not in the real property owned by the LLC, and 2) as discussed *supra* herein, an equitable interest in real property may be shown by occupancy.

0031

transfer ownership of a manufactured home or manufactured home. The June 7, 2021, Title Search did not note any pending applications for title or registration change that might have added Debtor as the registered or legal owner of the Property before the Petition Date. And, Debtor paid no fees to the HCD between June 7, 2021, and the Petition Date that could have effectuated a title change. See Hays Decl., Ex. 26.

Moreover, the July 2021 HCD Transaction had a transaction date of July 14, 2021—five days after the Petition Date—and included a certificate of title showing J-Sandcastle LLC as the Property's registered owner and Pierpont and J-Pad LLC as the Property's legal owners. Hays Decl., Ex. 21 at 171. Included in this post-petition transaction was a document to add Debtor as the Property's "New Registered Owner." Id. at 172. Also attached was a County of Orange "Tax Clearance Certificate" issued and executed on the Petition Date, which gave the Property's "Current Registered Owner" as J1Sandcastle LLC. Id. at 191. The August 2021 HCD Transaction did include a certificate of title showing Debtor as the Property's registered owner, but according to the certificate, title was issued on August 3, 2021, nearly a month after the Petition Date. Hays Decl., Ex. 22 at 195.

Second, between February 1, 2021, and the Petition Date, all payments that Debtor submitted to Houser Bros. listed J-Sandcastle LLC as the payor/were on behalf of J-Sandcastle LLC. Only after the Petition Date did Debtor submit a payment on her own behalf. See Hays Decl. Ex. 23 at 203-222.

Third, Debtor provides no credible evidence that she acquired an interest from the LLC on February 25, 2021. In Debtor's Original Schedules, filed on the Petition Date (July 9, 2021), Debtor provided, under penalty of perjury, that "Registered Title with HCD Debtor's single member LLC, J1Sandcastle Co, LLC." Motion at 33 (Exhibit 2). In addition, Debtor, in the Opposition, asserts J-Sandcastle LLC's executed a notarized release of title document, claiming: "On the petition date July 9, 2021, the registered title owner of the manufactured home located at 16222 Monterey Lane, Unit #376, Huntington Beach, CA 92649 ('Property') was Jamie Lynn Gallian as of February 25, 2021, the date J-Sandcastle Co LLC signed and dated to release the Certificate of Title to Jamie Lynn Gallian, notarized the same date." Opp'n., 29. However, Mr. Buysman did not actually notarize these documents. Instead, Mr. Buysman's notary book shows that on February 25, 2021, he notarized for Debtor an "Affidavit of Death" and a "Transfer Grant Deed." Buysman Decl., ¶7-11. Mr. Buysman did not notarize the July 2021 HCD Submission either. Id. Debtor's improperly filed July 8 response, even if considered by the court, would be insufficient to counter the statements and documentary evidence set forth in the Buysman Declaration.

-------------------------------

In conclusion, Debtor failed to carry her burden because, on the Petition Date, the Property's registered owner was J-Sandcastle LLC, and the legal owners were Pierpont and J-Pad, LLC. As a result, the Property was not part of the estate and not eligible for an exemption.

Neither the Court's ruling at the hearing or the Homestead Order includes a full or proper analysis of Debtor's claimed automatic homestead exemption under Cal. Civ Proc. Code § 704.720(a).  The Court believes such oversight was in error.

<u>Relief Under Either FRCP 59(e) or FRCP 60(b) is Warranted Because Debtor has Demonstrated Entitlement to an Automatic Homestead Exemption Under Cal.Civ.Proc. Code §704.720(a)</u>

Though the Motion does not specifically cite FRCP 59(e) or FRCP 60(b), the substance of the arguments therein is consistent with either Rule and Debtor clarifies in her Reply brief that she is seeking relief under both Rules. Debtor's Reply brief at 5. As previously noted, it is undisputed that Debtor has resided continuously on the Property as her principal residence from November 2018 to through the petition date and beyond. As a matter of law, Debtor meets the requirements for an automatic homestead exemption under Cal. Civ. Proc. Code §§ 704.710(c) and 704.720(a).

In *In re Gilman*, 887 F.3d 956, 964-965 (9th Cir. 2018), the Ninth Circuit held as follows:

> California provides for an "automatic" homestead exemption. Cal. Civ. Proc. Code § 704.720(a). The automatic homestead exemption protects a debtor "who resides (or who is related to one who resides) in the homestead property at the time of a forced judicial sale of the dwelling." *In re Anderson*, 824 F.2d 754, 757 (9th Cir. 1987); *see also Diaz*, 547 B.R. at 334 ("The filing of a bankruptcy petition constitutes a forced sale for purposes of the automatic homestead exemption.").

> Under Cal. Civ. Proc. Code § 704.710(c), a "homestead" is "the principal dwelling (1) in which the judgment debtor or the judgment debtor's spouse resided on the date the judgment

9

0033

creditor's lien attached to the dwelling, and (2) in which the judgment debtor or the judgment debtor's spouse resided continuously thereafter until the date of the court determination that the dwelling is a homestead." This "requires only that the judgment debtor *reside* in the property as his or her principal dwelling at the time the judgment creditor's lien attaches and continuously thereafter until the court determines the dwelling is a homestead." *In re Elliott*, 523 B.R. 188, 196 (BAP 9th Cir. 2014) (quoting *Tarlesson*, 184 Cal. App. 4th at 937, 109 Cal.Rptr.3d 319). It does not require that the debtor continuously own the property. *Id.*

To determine whether a debtor resides in a property for homestead purposes, courts consider the debtor's physical occupancy of the property and the intent to reside there. *Diaz*, 547 B.R. at 335; *Ellsworth v. Marshall*, 196 Cal.App. 2d 471, 474, 16 Cal.Rptr. 588 (1961) ("The physical fact of the occupancy and the intention with which the premises are occupied 'are both elements to be considered in determining the actual residence.' ") (quoting *Lakas v. Archambault*, 38 Cal.App. 365, 372, 176 P. 180 (1918)).

California law rejects Phillips' argument that title to the property is necessary to claim a homestead exemption. For instance, *Tarlesson* held that "judgment debtors who continuously reside in their dwellings retain a sufficient equitable interest in the property to claim a homestead exemption even when they have conveyed title to another." 184 Cal.App. 4th at 937, 109 Cal.Rptr.3d 319. The court further noted that "[s]uch a result is consistent with the purpose of California's homestead exemption to protect one's dwelling against creditors." *Id.* Likewise, *Elliott* held that conveyance to a third party does not defeat a debtor's right to an automatic exemption, "because continuous residency, rather than continuous ownership," controls the analysis. 523 B.R. at 196.

Importantly, *Gilman* cites with favor the case of *Tarlesson v. Broadway Foreclosure Investments, LLC*, 184 Cal.App.4th 931 (2010). In analyzing the interplay between Cal. Civ. Proc. Code §§ 703.720 and 704.710(c), the Tarlesson Court explained:

Broadway bases its argument in substantial part on the language of section 703.020 which provides that statutory exemptions "apply only to property of a natural person." Broadway reads section 703.020 to imply a requirement of ownership. But the authorities Broadway cites do not support its argument. While section 703.020, subdivision (a) states generally that "[t]he exemptions provided by this chapter apply only to property of a natural person," the statutory definition of "homestead" provided in section 704.710 requires only that the judgment debtor reside in the property as his or her principal dwelling at the time the judgment creditor's lien attaches and continuously thereafter until the court determines the dwelling is a homestead. (§ 704.710, subd. (c).) There is no requirement in section 704.710 that the judgment debtor continuously

10

0034

own the property, and we do not read section 703.020 to impose
such a requirement. 184 Cal.App.4th at 937.

Further, the Court in *Tarlesson* recognized that "debtors who continuously

reside in their dwellings retain a sufficient equitable interest in the property to claim

a homestead exemption even when they have conveyed title to another." *Id.*

(citations omitted).  Accordingly, the Court finds and concludes that Debtor

satisfied her burden of establishing entitlement to an automatic homestead

exemption under California law and that the Court erred in not recognizing such

entitlement in its Homestead Order.

> Debtor's Homestead Exemption in the Amount of $600,000 Allowed by Cal.
>
> Civ. Proc. Code § 704.730(a) is Not Limited by § 522(p)(1)

In its Response to the Motion, Houser Bros requests that if the Court grants

the Motion to allow Debtor a homestead exemption, such exemption should be

limited to $170,350 pursuant to 11 U.S.C. § 522(p)(1) because, according to

Debtor, she acquired an ownership interest in the Property on February 21, 2022

(less than 180 days before the bankruptcy filing).  Section 522(p)(1) limits a

debtor's ability to take advantage of homestead exemptions under state law.

Specifically, § 522(p)(1) provides that a debtor "may not exempt any amount of

interest *that was acquired by the debtor* during the 1215-day period preceding the

date of the filing of the petition that exceeds . . . $170,350 in value in real or

personal property that the debtor . . . uses as a residence." (emphasis added)  A

majority of courts have held that § 522(p)(1) applies to "opt-out" states such as

California.  See, *In re Virissimo*, 332 B.R. 201, 207 (Bankr. D.Nev.2005); *Kane v.

Zions Bancorporation, N.A.*, 2022 WL 4591787 (September 29, 2022). This Court

11

0035

agrees with the majority view regarding the application of § 522(p)(1) to exemptions allowed under California law.

The Ninth Circuit has held that "it appears that Congress intended 'acquire' to mean 'gaining possession or control' by purchasing or gaining an ownership interest, either legal or equitable." *In re Greene*, 583 F.3d 614, 623 (9th Cir.2009). California law provides for an automatic homestead exemption, which protects a debtor "who resides . . . in the homestead property at the time of a forced judicial sale of the dwelling." *Gilman*, 887 F.3d at 964. The filing of a bankruptcy petition has been held to constitute a forced sale that triggers the application of the automatic homestead exemption. *In re Elliott,* 523 B.R. 188, 195 (9th Cir. BAP 2014). As previously noted, in California, title to the property is not necessary to claim an automatic homestead exemption. *Gilman* at 965 ("To determine whether a debtor resides in a property for homestead purposes, courts consider the debtor's physical occupancy of the property and the intent to reside there.")

Here, Debtor has sufficiently demonstrated both continuous occupancy of the Property as well as her intent to reside there. Consequently, she qualifies for the homestead exemption provided under Cal. Civ. Proc. Code § 704.720(a) without regard to, and irrespective of, her subsequent acquisition of legal title. Accordingly, the amount of her exemption permitted under Cal. Civ Proc. Code § 704.730(a) is not affected by the restriction imposed by § 522(p)(1).

<u>Conclusion</u>

Based upon the foregoing, the Court finds and concludes that 1) Debtor's continuous possession and occupation of the Property as her principal residence (irrespective of ownership) constitutes an equitable interest that is sufficient to establish her entitlement to the automatic homestead exemption provided by Cal. Civ. Proc. Code

12

0036

§§ 704.720(a) and 704.730(a), 2) the Motion should be granted under FRCP 59(e) on the basis of manifest error of law and under FRCP 60(b)(6); 3) the Court's Homestead Order entered on August 5, 2022 should be vacated and the underlying Homestead Motion related thereto should be deemed denied; and 4) Debtor is entitled to a homestead exemption in the amount of $600,000.

###

Date: December 19, 2022

Erithe Smith
United States Bankruptcy Judge

13

0037



FILED & ENTERED

DEC 19 2022

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY mccall    DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>JAMIE LYNN GALLIAN,<br><br><br>Debtor. | Chapter 7<br><br>Case No. 8:21-bk-11710-SC<br><br>**ORDER GRANTING DEBTOR'S MOTION FOR RECONSIDERATION OF THE COURT'S AUGUST 5, 2022 ORDER SUSTAINING OBJECTION TO DEBTOR'S HOMESTEAD EXEMPTION**<br><br>Date:    September 22, 2022<br>Time:   10:00 a.m.<br>Place:  Courtroom 5A – via zoom |

On July 26, 2022, Jamie Lynn Gallian ("Debtor") filed "Debtors [sic] Notice of and Motion for Reconsideration of 7.21.22 Order Sustaining Houser Bros. Co. DBA Rancho Del Rey Mobile Home Estates [sic] Objection to Debtor's Claimed Homestead Exemption and Joinder Parties Huntington Beach Gables HOA; Janine Jasso" [dkt # 157] (the "Motion"). Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates ("Houser Bros") filed a "Response to Debtor's Notice of and Motion for Reconsideration of 7.21.22 Order Sustaining Houser Bros. Co. DBA Rancho Del Rey Mobile Home Estate's [sic] Objection to Debtor's Claimed Homestead Exemption" [dkt # 170] (the "Response") on August 4,

1  2022. Jeffrey Golden, the Chapter 7 Trustee ("Trustee"), filed "Trustee's Joinder in

2  Houser Bros. Co. DBA Rancho Del Rey Mobile Home Estates' Response to Debtor's

3  Notice of and Motion for Reconsideration of 7.21.22 Order Sustaining Houser Bros. Co.

4  DBA Rancho Del Rey Mobile Home Estate's [sic] Objection to Debtor's Claimed

5  6  Homestead Objection" [dkt 171] (the "Trustee's Joinder") on August 4, 2022. Also on

7  August 4, 2022, the Huntington Beach Gables Homeowners Association (the "HOA") filed

8  "The Huntington Beach Gables Homeowners Association's Joinder to Houser Bros. Co.

9  dba Rancho Del Rey Mobile Home Estates' Response to Debtor's Motion for

10  Reconsideration" [dkt #173] (the "HOA Joinder"). Debtor filed a "Reply to Houser Bros Co

11  DBA Rancho Del Rey MobileHome [sic] Estates [sic] Opposition to Debtors [sic[ Motion

12  13  for Consideration [sic] of 7/21/22 Order Sustaining Houser Bros Co DBA Rancho Del Rey

14  Mobilehome [sic] Estates [sic] Objection to Debtor's Claimed Homestead Exemption" [dkt

15  #185] (the "Reply").  The Motion initially came on for hearing before the Honorable Erithe

16  A. Smith, United States Bankruptcy Judge, on August 18, 2022 at 10:30 a.m. The hearing

17  was subsequently continued to September 22, 2022 for further oral argument.

18  Appearances were made as noted on the Court's record. After the hearing, the matter

19  was taken under advisement.[1]

20

21  For the reasons set forth in the Memorandum of Decision Regarding Debtor's

22  Motion for Reconsideration of the Court's August 5, 2022 Order Sustaining the Objection

23  to Debtor's Homestead Exemption entered on December 19, 2022 [Dkt. 273], it is hereby

24  ordered that:

25

26  [1] This case was transferred to the Honorable Scott Clarkson on September 1, 2022 due to the retirement of the undersigned, Judge Erithe Smith on October 29, 2022. However, as Judge Smith issued the underlying order sustaining Trustee's objection to Debtor's homestead exemption, presided over the hearing on

27  Debtor's instant motion for reconsideration, and continues to serve as a recalled bankruptcy judge, she has authority and jurisdiction to rule on the motion for reconsideration.

28

1        1.     The Motion is granted under FRCP 59(e) on the basis of manifest

2  error of law and under FRCP 60(b)(6);

3        2.     The Court's Homestead Order entered on August 5, 2022 [Dkt. 177] is

4  vacated and, as such, Houser Bros' Homestead Motion is deemed denied; and

5

6        3.     Debtor is entitled to a homestead exemption in the amount of

7  $600,000 pursuant to Cal. Civ. Proc. Code.  §§ 704.720(a) and 704.730(a).

8

9  ###

10

11

12

13

14

15

16

17

18

19

20

21

22

23  Date: December 19, 2022

24                                  Erithe Smith
United States Bankruptcy Judge

25

26

27

28

1

2

3

4

5

6

7

FILED & ENTERED

MAY 15 2024

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY jle        DEPUTY CLERK

8        **UNITED STATES BANKRUPTCY COURT**

9        **CENTRAL DISTRICT OF CALIFORNIA**

10        **SANTA ANA DIVISION**

11    In re                                  8:23-CV-00001-DSF
                                            Case No. 8:21-bk-11710-SC
12        **JAMIE LYNN GALLIAN**
                                            Chapter: 7
13            Debtor,
                                            **ORDER REGARDING "ORDER**
14                                          **REVERSING THE ORDER OF THE**
                                            **BANKRUPTCY COURT AND**
15                                          **REMANDING FOR FURTHER**
                                            **PROCEEDINGS" ENTERED BY THE**
16                                          **DISTRICT COURT ON NOVEMBER 1,**
                                            **2023**
17

18

19

20        On December 29, 2022, Houser Bros. Co. dba Rancho Del Rey Mobile Estates

21    ("Houser Bros.) appealed this Court's Order Granting Debtor's Motion for

22    Reconsideration of the Court's August 5, 2022 Order Sustaining Objection to Debtor's

23    Homestead Exemption entered on December 19, 2022 ("Reconsideration Order") in the

24    above referenced bankruptcy case.  Houser Bros. elected to have its appeal heard by the

25    United States District Court ("District Court").  On November 1, 2023, the District Court

26    entered its Order Reversing the Order of the Bankruptcy Court and Remanding for

27    Further Proceedings ("Reversal Order").

28

1        The Reversal Order directs this Court to issue findings concerning 1) the nature of

2    the Debtor Jamie Lynn Gallian's ("Debtor") interest in the 2014 Skyline Custom Villa

3    manufactured home located at 16222 Monterey Lane, Unit 376, Huntington Beach,

4    California (the "Property"), including whether Debtor ever acquired (and retained) an

5    equitable interest in the Property, and 2) whether title was transferred to her prior to the

6    date the bankruptcy petition was filed.  The within findings constitute the Court's

7    response to the remand directive of the Reversal Order.[1]

8        I.    <u>Background</u>

9        This matter involves a dispute over Debtor's claimed homestead exemption in the

10   Property.  On or about November 1, 2018, Debtor purchased the Property from

11   registered owner, Lisa Ryan ("Ryan") with proceeds Debtor received from the sale of her

12   previous home. Debtor's Motion for Reconsideration at 15.  [Dkt. 157].  However, on this

13   same date, Debtor caused Ryan to transfer the Certificate of Title regarding the Property

14   to her single-member limited liability company, J-Sandcastle Co LLC ("Sandcastle"),

15   which Certificate of Title was recorded by Debtor at the Department of Housing and

16   Community Development on November 16, 2018.  *Id.* at 26; Houser Bros.' Motion

17   Objecting to Debtor's Claimed Homestead Exemption, Exhs. 13 and 14 [Dkt 95].

18       A.  <u>Houser Bros.'s Motion Objecting to Debtor's Claimed Homestead Exemption</u>

19       On May 12, 2022, Houser Bros. filed its "Motion Objecting to Debtor's Claimed

20   Homestead Exemption" (Homestead Motion").  [Dkt.95].  Various other parties joined in

21   the Homestead Motion.  [Dkts. 98, 100].  The pleadings filed in support of the Homestead

22   Motion focused primarily on the argument that Debtor did not hold legal title to the

23

24   _____

[1] The underlying bankruptcy case was transferred to the Honorable Scott Clarkson on

25   September 1, 2022 due to the retirement of the undersigned, Judge Erithe Smith, on

     October 29, 2022. However, as Judge Smith presided over the hearing on Debtor's

26   Motion for Reconsideration and issued the Reconsideration Order in her capacity as a

27   recalled bankruptcy judge (effective until October 31, 2024), she has authority and

28   jurisdiction to issue the within findings.

1   Property as of the date the bankruptcy petition was filed, i.e., July 9, 2021 (the "Petition

2   Date") and, therefore, she was not entitled to claim a homestead exemption.

3        Debtor opposed the Homestead Motion, asserting that Sandcastle had transferred

4   its interest in the Property to her on or about February 25, 2021, prior to the Petition Date.

5   Debtor also argued that she was entitled to an automatic homestead exemption under

6   Cal. Civ. Proc. Code §§ 704.710(c) and 704.720(a) as she had continuously resided on

7   the Property since November 2018 through the Petition Date and had intended the same

8   to be her principal residence during such time.

9        The final hearing on the Homestead Motion was held on July 21, 2022.  At that

10  hearing, oral argument focused on the issue of legal ownership as of the Petition Date.

11  On August 5, 2022, this Court entered its Order Granting Houser Bros. Co. dba Rancho

12  Del Rey Mobile Home Estate's Motion Objecting to Debtor's Claimed Exemption in 16222

13  Monterey Lane, Space 376, Huntington Beach, CA 92649" [Dkt. 177] ("Homestead

14  Order") on the ground that Debtor did not hold legal title to the Property as of the Petition

15  and, therefore, was not entitled to a homestead exemption under Cal Civ. Pro. Code

16  §704.30.  This Court ruled that

17           . . . Debtor failed to meet her burden that the Property is

18       subject to exemption.  First, the HC records show that J-Sandcastle LLC,

19       not Debtor, was the owner of record, on the Petition Date.  As of June 7, 2021 –

20       about a month before the Petition Date – the Property's registered owner

21       was J-Sandcastle LLC, and the legal owners were Ron Pierpoint and J-Pad LLC.

22       Hays Decl., Ex. 17 at 142.

23  Homestead Order, Exh. 1 at 10.

24       The Court did not, however, rule on Debtor's claim to an automatic homestead

25  exemption under Cal. Civ. Proc. Code §§ 704.710(c) and 704.720(a).

26       B.  Debtor's Motion for Reconsideration of the Homestead Order

27       On July 26, 2022, Debtor filed her "Motion for Reconsideration of 7.21.22 Order

28

3

1 | [sic] Sustaining Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates Objection to

2 | Debtor's Claimed Homestead Objection, etc." ("Reconsideration Motion") [Dkt.157]. [2]

3 | Debtor reiterated her claimed status as legal owner, as well as entitlement to an

4 | automatic homestead exemption. Opposition pleadings to the Reconsideration Motion

5 | were filed by Houser Bros. and other interested parties.

6 |        On December 19, 2022, this Court entered its Reconsideration Order on the

7 | ground that Debtor was entitled to an automatic homestead exemption.  [Dkt 274].  Also

8 | on December 19, 2022, the Court entered its "Memorandum of Decision Regarding

9 | Debtor's Motion for Reconsideration of the Court's August 5, 2022 Order Sustaining

10 | Objection to Debtor's Homestead Exemption ("Memorandum of Decision"). [Dkt. 273]. [3]

11 | II.      Findings in Response to the District Court's Reversal Order

12 |        A.  Did Debtor Have an Equitable Interest in the Property as of the Petition Date?

13 |        Yes.  This Court finds that, notwithstanding the fact that Sandcastle was the

14 | registered owner and Ron Pierpont and J-Pad LLC were the legal owners of the Property,

15 | Debtor held an equitable interest in the Property as of the date of the Petition that

16 | satisfied the requirements for an automatic homestead exemption under Cal. Civ. Proc.

17 | Code §§ 704.10(c) and 704.720(a). [4]

18 |        In *In re Gilman*, 887 F.3d 956-965 (9th Cir. 2018), the Ninth Circuit provides a clear

19 | analysis of California's automatic homestead laws, to wit:

20 |            California  provides  for  an  'automatic'  homestead
exemption. Cal. Civ. Proc. Code § 704.720(a). The automatic

21 |            homestead exemption protects a debtor 'who resides (or who is
related to one who resides) in the homestead property at the time of

22 |            a forced judicial sale of the dwelling.' *In re Anderson*, 824 F.2d 754,

23 | _____

[2] Debtor filed the Reconsideration Motion prior to the entry of the Homestead Order on August 5, 2022.

24 | [3] The Memorandum of Decision was intended to serve as the Court's findings of fact and conclusions of

25 | law in support of the Reconsideration Order and was incorporated by reference in the Reconsideration
Order.

26 | [4] A "manufactured home together with the outbuildings and land upon which they are

27 | situated" is eligible for a homestead exemption. Cal. Code Civ. Proc. § 704.710(a)(2)

28 | (defining "dwelling").

757 (9th Cir. 1987); *see also Diaz*, 547 B.R. at 334 ("The filing of a bankruptcy petition constitutes a forced sale for purposes of the automatic homestead exemption.").

Under Cal. Civ. Proc. Code § 704.710(c), a 'homestead' is 'the principal dwelling (1) in which the judgment debtor or the judgment debtor's spouse resided on the date the judgment creditor's lien attached to the dwelling, and (2) in which the judgment debtor or the judgment debtor's spouse resided continuously thereafter until the date of the court determination that the dwelling is a homestead.' This "requires only that the judgment debtor *reside* in the property as his or her principal dwelling at the time the judgment creditor's lien attaches and continuously thereafter until the court determines the dwelling is a homestead." *In re Elliott*, 523 B.R. 188, 196 (BAP 9th Cir. 2014) (quoting *Tarlesson*, 184 Cal. App. 4th at 937, 109 Cal.Rptr.3d 319). It does not require that the debtor continuously own the property. *Id.*

To determine whether a debtor resides in a property for homestead purposes, courts consider the debtor's physical occupancy of the property and the intent to reside there. *Diaz*, 547 B.R. at 335; *Ellsworth v. Marshall*, 196 Cal.App. 2d 471, 474, 16 Cal.Rptr. 588 (1961) ('The physical fact of the occupancy and the intention with which the premises are occupied 'are both elements to be considered in determining the actual residence.') (quoting *Lakas v. Archambault*, 38 Cal.App. 365, 372, 176 P. 180 (1918)).

**California law rejects [the] argument that title to the property is necessary to claim a homestead exemption. For instance,** *Tarlesson* **held that 'judgment debtors who continuously reside in their dwellings retain a sufficient equitable interest in the property to claim a homestead exemption even when they have conveyed title to another'** 184 Cal.App. 4th at 937, 109 Cal.Rptr.3d 319. The court further noted that "[s]uch a result is consistent with the purpose of California's homestead exemption to protect one's dwelling against creditors." *Id.* Likewise, *Elliott* held that **conveyance to a third party does not defeat a debtor's right to an automatic exemption, 'because continuous residency, rather than continuous ownership,' controls the analysis**. 523 B.R. at 196.

(emphasis added)

According to the record, which is undisputed, Debtor used her own personal funds to purchase the Property.  More importantly, it is also undisputed that Debtor has continuously resided on the Property since November 2018 through and beyond the Petition Date.  Finally, there was no persuasive evidence presented by those in

1    opposition to the Reconsideration Motion to refute Debtor's position that she intended to

2    reside on the Property as her principal residence during the same period.  Accordingly,

3    this Court finds that by her continuous possession and use of the Property as her

4    principal residence since November 2018, Debtor held a sufficient equitable interest in

5    the Property to claim an automatic homestead exemption under Cal. Civ. Proc. Code

6    § 704.720(a).  *Gilman*, 887 F.3d at 964; *Tarlesson*, 184 Cal. App. 4th at 937.

7        B.  <u>Was Title Transferred to Debtor Prior to the Petition Date?</u>

8        No. The Reconsideration Motion was granted <u>solely</u> on the basis of Debtor's

9    *equitable* interest in the Property.  The Reconsideration Order did not in any way alter,

10    change or modify the Court's finding in the Homestead Order regarding Debtor's lack of

11    *legal* title as of the Petition Date.  None of the evidence presented by Debtor in the

12    Reconsideration Motion persuaded the Court to reverse its finding in that regard.

13    Specifically, Debtor presented no credible evidence that the certificate of title showing

14    Sandcastle as the registered owner of the Property was transferred to her prior to the

15    Petition Date.  On the contrary, Houser Bros. presented documentation establishing that

16    a certificate of title showing Debtor as the new registered owner of the Property was not

17    issued until August 3, 2021, nearly a month after the Petition Date.  See Homestead

18    Motion, Hays Decl., Exh. 22 at 195.  Based on the record presented, the Court finds that

19    title to the Property was not transferred to Debtor prior to the Petition Date.

20    //

21    //

22    //

23    //

24    //

25    //

26    //

27    //

28    //

6

1    III.    Conclusion

2        The Court finds that Debtor held a sufficient equitable interest in the Property to

3    claim an automatic homestead exemption under Cal. Civ. Proc. Code § 704.720(a).

4                                        ###

Date: May 15, 2024

*Erithe A. Smith*
Erithe Smith
United States Bankruptcy Judge

7

0047

# STATE OF CALIFORNIA - DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT
## CERTIFICATE OF TITLE
Manufactured Home

Decal No: LBM1081

| Manufacturer ID/Name | | Trade Name | Model | DOM | DFS | RY | Exp. Date | |
|---|---|---|---|---|---|---|---|---|
| 90002    SKYLINE HOMES INC | | CUSTOM VILLA | | 05/29/2014 | 07/28/2014 | | | |
| Serial Number | Label/Insignia Number | Weight | Length | Width | SPC | SCC | Exempt | Use | Type |
| AC7V710394GB | PFS1130281 | 22,383 | 56' | 15' 2" | | 30 | | SFD | LPT |
| AC7V710394GA | PFS1130282 | 25,068 | 60' | 15' 2" | | | | | |

Issued
Sep 10, 2014

Total Fees Paid
$91.00

**Addressee**
LISA T RYAN
16222 MONTEREY LN 376
HUNTINGTON BEACH, CA 92649

**Registered Owner(s)**
LISA T RYAN
16222 MONTEREY LN 376
HUNTINGTON BEACH, CA 92649

**Situs Address**
16222 MONTEREY LN 376
HUNTINGTON BEACH, CA 92649

**IMPORTANT**
THE OWNER INFORMATION SHOWN ABOVE MAY NOT REFLECT ALL LIENS RECORDED WITH THE
DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT AGAINST THE DESCRIBED UNIT.
THE CURRENT TITLE STATUS OF THE UNIT MAY BE CONFIRMED THROUGH THE DEPARTMENT.

DTN: 8169431

NOV 1 6 2018

09102014 - 244

0048

# STATE OF CALIFORNIA - DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT
## CERTIFICATE OF TITLE

Manufactured Home

**Decal:   LBM1081**

| Manufacturer ID/Name | Trade Name | Model | | DOM | DFS | RY |
|---|---|---|---|---|---|---|
| 90002   SKYLINE HOMES INC | CUSTOM VILLA | .. | | 05/29/2014 | 07/28/2014 | |

| Serial Number | Label/Insignia Number | Weight | Length | Width | Issued | |
|---|---|---|---|---|---|---|
| AC7V710394GB | PFS1130281 | 22,383 | 56' | 15' 2" | Jan 19, 2019 | |
| AC7V710394GA | PFS1130282 | 25,068 | 60' | 15' 2" | | |

**Addressee**

J-SANDCASTLE CO LLC
16222 MONTEREY LANE ROOM 376
HUNTINGTON BEACH, CA 92649

**Registered Owner(s)**

J-SANDCASTLE CO LLC
16222 MONTEREY LANE ROOM 376
HUNTINGTON BEACH, CA 92649

**Situs Address**

16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA 92649

### IMPORTANT
**THE OWNER INFORMATION SHOWN ABOVE MAY NOT REFLECT ALL LIENS RECORDED WITH THE
DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT AGAINST THE DESCRIBED UNIT. THE
CURRENT TITLE STATUS OF THE UNIT MAY BE CONFIRMED THROUGH THE DEPARTMENT.**

DTN: 10670236

01192019 - 2



DTN:                   **12153896**

Decal:                 **LBM1081**

Unit ID:               252606085

Trans Type:            L/O Assignment

Trans Date:            02/01/2021

Trade Name:            CUSTOM VILLA

Serial #:              AC7V710394GA, AC7V710394GB

Insignia #             PFS1130281, PFS1130282

Status Date:     02/23/2021      User Name:     SHAH, KIRAN

# STATE OF CALIFORNIA - DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT

## CERTIFICATE OF TITLE

Manufactured Home                                          **Decal:** **LBM1081**

| Manufacturer ID/Name | Trade Name | Model | | DOM | DFS | RY |
|---|---|---|---|---|---|---|
| 90002    SKYLINE HOMES INC | CUSTOM VILLA | | | 05/29/2014 | 07/28/2014 | |
| **Serial Number** | **Label/Insignia Number** | **Weight** | **Length** | **Width** | **Issued** | |
| AC7V710394GB | PFS1130281 | 22,383 | 56' | 15' 2" | Feb 24, 2021 | |
| AC7V710394GA | PFS1130282 | 25,068 | 60' | 15' 2" | | |

**Addressee**

RONALD J PIERPONT
16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA  92649

**Registered Owner(s)**

J-SANDCASTLE CO LLC
16222 MONTEREY LANE ROOM 376
HUNTINGTON BEACH, CA 92649

**Situs Address**

16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA 92649

**Legal Owner(s)**

RONALD J PIERPONT
JPAD LLC
Tenants in Common Or
16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA 92649

Lien Perfected On:        08/20/20 11:58:00

**IMPORTANT**
THE OWNER INFORMATION SHOWN ABOVE MAY NOT REFLECT ALL LIENS RECORDED WITH THE
DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT AGAINST THE DESCRIBED UNIT.  THE
CURRENT TITLE STATUS OF THE UNIT MAY BE CONFIRMED THROUGH THE DEPARTMENT.

DTN: 12153896

02242021 - 2

0051

STATE OF CALIFORNIA
BUSINESS, CONSUMER SERVICES AND HOUSING AGENCY
DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT
DIVISION OF CODES AND STANDARDS
REGISTRATION AND TITLING PROGRAM
PO Box 277820 Sacramento, CA  95827
1-800-952-8356
www.hcd.ca.gov



## NOTICE OF SALE OR TRANSFER

**ATTENTION: THIS FORM IS TO BE USED ONLY WHEN YOU SELL OR TRANSFER YOUR MANUFACTURED HOME/MOBILEHOME OR COMMERCIAL MODULAR.  AT THAT TIME COMPLETE, SIGN, AND RETURN TO THE ADDRESS STATED ABOVE TO REPORT THE CHANGE OF OWNERSHIP.  A COMPLETE TRANSFER APPLICATION PACKET MUST BE SENT IN TO COMPLETE THE TRANSFER OF TITLE.**

**SECTION I:**  Enter the following information that describes your unit: Decal/License plate number(s), Serial(s) number, and Trade name of unit.

**SECTION II:**  Enter the sale price and the date of sale/transfer including the month, day, and year.

**SECTION III:**  Enter the full name and mailing address of the new owner/buyer(s).

**SECTION IV:**  Enter date, city, and state indicating where and when this form is being executed.  SELLER(S) MUST SIGN and print their names(s).

| SECTION I. | DESCRIPTION OF UNIT | |
|---|---|---|
| Decal Number(s) | Serial Number(s) | Trade Name |
| LBM1081 | AC7V710394GA; AC7V710394GA | SKYLINE CUSTOM VILLA |
| | | |
| | | |

**SECTION II.     SALE OR TRANSFER INFORMATION**

For the sum of $ _____ 0 the receipt of which is hereby acknowledged, I/we did sell, transfer and deliver to the purchaser/owner named below, on 02/25/2021 ____, my/our right title and interest in the unit described above.
*Date of Transfer*

**SECTION III.     NAME OF PURCHASER/NEW OWNER**

Name:
JAMIE LYNN GALLIAN AND J-SANDCASTLE, CO LLC

Address:
16222 MONTEREY LN #376

| City: | State: | Zip Code: |
|---|---|---|
| HUNTINGTON BEACH | CALIFORNIA | 92649-0000 |

**SECTION IV.     CERTIFICATION AND RELEASE OF SELLER(S)**

I/We certify under penalty of perjury under the laws of the State of California that: 1) I/we are the lawful owner(s) of the unit, and 2) I/we have the right to sell it, and 3) I/we guarantee and will defend the title to the unit against the claims and demands of any and all persons arising prior to this date, and 4) the unit is free of all liens and encumbrances.

I/We certify under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed On 02/25/2021 ____ at HUNTINGTON BEACH ____, CALIFORNIA
*Date*                              *City*                        *State*

Signature of Seller: ____ It's menber.

Signature of Seller: ____

Printed Name(s): J-SANDCASTLE CO LLC

HCD RT 476.8 (Rev. 03/21)

0052

STATE OF CALIFORNIA
BUSINESS, CONSUMER SERVICES AND HOUSING AGENCY
DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT
DIVISION OF CODES AND STANDARDS
REGISTRATION AND TITLING PROGRAM



## LIEN SATISFIED

**SECTION I.** **DESCRIPTION OF UNIT**

This unit is a:

☑ Manufactured Home/Mobilehome ☐ Commercial Modular ☐ Floating Home ☐ Truck Camper

The Decal (License) No.(s) of the unit is: LBM1081

The Trade Name of the unit is: CUSTOM VILLA

The Serial No.(s) of the unit is: AC7V710394GB/AC7V710394GA

**SECTION II.** **DEBTOR(S) NAME(S)**

Name of Debtor(s): J-SANDCASTLE CO, LLC

**SECTION III.** **LIENHOLDER'S CERTIFICATION**

This is to certify that our/my lien in the name(s) of the debtor(s) shown above against the described unit has been fully satisfied and has not been assigned to any other party.

I/We certify under penalty of perjury that the foregoing is true and correct.

Print or Type Name of Legal Owner or Jr. Lienholder (Lender):

J-PAD LLC or RONALD J. PIERPONT

Signature of Legal Owner, Jr. Lienholder (Lender) or their Authorized Agent:

Date 7/9/2021

Address ___16222 MONTEREY LN. #376___ ___HUNTINGTON BEACH,___ ___CA___ ___92649___
       Street Address or P.O. Box               City        State     Zip

HCD RT 475.3 (Rev. 07/16)

**STATE OF CALIFORNIA - DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT**
## CERTIFICATE OF TITLE

Manufactured Home                    **Decal:   LBM1081**

| Manufacturer ID/Name<br>90002   SKYLINE HOMES INC | Trade Name<br>CUSTOM VILLA | Model | | DOM<br>05/29/2014 | DFS<br>07/28/2014 | RY |
|---|---|---|---|---|---|---|
| Serial Number<br>AC7V710394GB<br>AC7V710394GA | Label/Insignia Number<br>PFS1130281<br>PFS1130282 | Weight<br>22,383<br>25,068 | Length<br>56'<br>60' | Width<br>15'2"<br>15'2" | Issued<br>Feb 24, 2021 | |

**Addressee**

RONALD J PIERPONT
16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA 92649

JUL 14 2021

**Registered Owner(s)**

J-SANDCASTLE CO LLC
16222 MONTEREY LANE ROOM 376
HUNTINGTON BEACH, CA 92649

**Situs Address**

16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA 92649

**Legal Owner(s)**

RONALD J PIERPONT
JPAD LLC
Tenants in Common Or
16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA 92649

Lien Perfected On:      08/20/20 11:58:00

**IMPORTANT**
THE OWNER INFORMATION SHOWN ABOVE MAY NOT REFLECT ALL LIENS RECORDED WITH THE
DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT AGAINST THE DESCRIBED UNIT. THE
CURRENT TITLE STATUS OF THE UNIT MAY BE CONFIRMED THROUGH THE DEPARTMENT.

DTN: 12153896

02242021 - 2

0054

STATE OF CALIFORNIA - BUSINESS, CONSUMER SERVICES AND HOUSING AGENCY                      GAVIN NEWSOM, Governor

**DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT**
**DIVISION OF CODES AND STANDARDS**



## Title Search

Date Printed:  Jul 27, 2021

| | | | |
|---|---|---|---|
| Decal #: | LBM1081 | Use Code: | SFD |
| Manufacturer: | SKYLINE HOMES INC | Original Price Code: | BVH |
| Tradename: | CUSTOM VILLA | Rating Year: | |
| Model: | | Tax Type: | LPT |

| | | |
|---|---|---|
| Manufactured Date: | 05/29/2014 | Last ILT Amount: |
| Registration Exp: | | Date ILT Fees Paid: |
| First Sold On: | 07/28/2014 | ILT Exemption:   NONE |

| Serial Number | HUD Label / Insignia | Length | Width |
|---|---|---|---|
| AC7V710394GA | PFS1130282 | 60' | 15' 2" |
| AC7V710394GB | PFS1130281 | 56' | 15' 2" |

Record Conditions:

- An application for title or registration change is pending with the department. For information regarding this application, please call 1-800-952-8356 and request to speak with a customer representative.

Registered Owner:

JAMIE LYNN GALLIAN
16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA 92649

| | |
|---|---|
| **Last Title Date:** | 02/24/2021 |
| **Last Reg Card:** | Pending Reg Card |
| **Sale/Transfer Info:** | Price $.00 Transferred on 02/25/2021 |

Situs Address:

16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA 92649
Situs County:  ORANGE

Legal Owner:

JPAD LLC
RONALD J PIERPONT
Tenants in Common Or
16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA 92649

| | |
|---|---|
| **Lien Perfected On:** | 02/25/21 10:11:00 |

Title Searches:

JANINE JASSO
PO BOX 370161
EL PASO, TX 79937

| | |
|---|---|
| **Title File No:** | LBM1081 |



| | |
|---|---|
| DTN: | 12313525 |
| Decal: | LBM1081 |
| Unit ID: | 252606085 |
| Trans Type: | R/O Transfer - No Sale |
| Trans Date: | 07/14/2021 |
| Trade Name: | CUSTOM VILLA |
| Serial #: | AC7V710394GA, AC7V710394GB |
| Insignia # | PFS1130281, PFS1130282 |

Status Date:    08/02/2021    User Name:    SHAH, KIRAN

# STATE OF CALIFORNIA - DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT
## CERTIFICATE OF TITLE

Manufactured Home                    **Decal:   LBM1081**

| Manufacturer ID/Name | Trade Name | Model | | DOM 05/29/2014 | DFS 07/28/2014 | RY |
|---|---|---|---|---|---|---|
| 90002   SKYLINE HOMES INC | CUSTOM VILLA | | | | | |
| Serial Number | Label/Insignia Number | Weight | Length | Width | Issued | |
| AC7V710394GB | PFS1130281 | 22,383 | 56' | 15' 2" | Aug 03, 2021 | |
| AC7V710394GA | PFS1130282 | 25,068 | 60' | 15' 2" | | |

**Addressee**

JAMIE LYNN GALLIAN
16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA 92649

**Registered Owner(s)**

JAMIE LYNN GALLIAN
16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA 92649

**Situs Address**

16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA 92649

I hereby certify that this copy is a true and correct copy of
the original document on file with the Department of
Housing & Community Development.

_____
Signature

**IMPORTANT**
THE OWNER INFORMATION SHOWN ABOVE MAY NOT REFLECT ALL LIENS RECORDED WITH THE
DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT AGAINST THE DESCRIBED UNIT. THE
CURRENT TITLE STATUS OF THE UNIT MAY BE CONFIRMED THROUGH THE DEPARTMENT.

DTN: 12313525                                                    08032021 - 2

STATE OF CALIFORNIA
BUSINESS, CONSUMER SERVICES AND HOUSING AGENCY
DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT
DIVISION OF CODES AND STANDARDS
REGISTRATION AND TITLING PROGRAM



## STATEMENT OF FACTS

This unit is a: ☑ Manufactured Home / Mobilehome  ☐ Commercial Modular  ☐ Floating Home  ☐ Truck Camper

| Decal (License) No.(s): | Trade Name: | Serial No.(s): |
|---|---|---|
| LBM 1081 | | |

I/We, the undersigned, hereby state:

I spoke with Jamie Gallian and she states the unit should be registered as Jamie Gallian as sole registered owner. The lien has been satisfied and there is no legal owner at this time. Jamie advised the county and was told there was no need to revise the Tax Clearance certificate.

I/We further agree to indemnify and save harmless the Director of the Department of Housing and Community Development, State of California, and subsequent purchasers of said unit, for any loss they may suffer resulting from registration of the above-described unit in California, or from issuance of a California Certificate of Title covering the same.

I/We certify under penalty of perjury that the foregoing is true and correct.

Executed on _7/28/21_ at _Sacramento_ , _CA_
                   Date                         City                    State

Signature(s):
_Rebecca M. O'Loughlin_

Printed name(s):
Rebecca M O'Loughlin, Program Tech III

Address _____

City _____  State _____

HCD RT 476.6 (Rev. 07/16)

0058



DTN:                    **12339739**

Decal:                  **LBM1081**

Unit ID:                252606085

Trans Type:             L/O Addition

Trans Date:             08/10/2021

Trade Name:             CUSTOM VILLA

Serial #:               AC7V710394GA, AC7V710394GB

Insignia #              PFS1130281, PFS1130282

Status Date:      08/11/2021      User Name:     CRUZ, SYLVIA

STATE OF CALIFORNIA - BUSINESS, CONSUMER SERVICES AND HOUSING AGENCY       **GAVIN NEWSOM, Governor**

**DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT**
DIVISION OF CODES AND STANDARDS



## Title Search

Date Printed: Aug 11, 2021

| | | | |
|---|---|---|---|
| Decal #: | LBM1081 | Use Code: | SFD |
| Manufacturer: | SKYLINE HOMES INC | Original Price Code: | BVH |
| Tradename: | CUSTOM VILLA | Rating Year: | |
| Model: | | Tax Type: | LPT |
| Manufactured Date: | 05/29/2014 | Last ILT Amount: | |
| Registration Exp: | | Date ILT Fees Paid: | |
| First Sold On: | 07/28/2014 | ILT Exemption: | NONE |

| Serial Number | HUD Label / Insignia | Length | Width |
|---|---|---|---|
| AC7V710394GA | PFS1130282 | 60' | 15' 2" |
| AC7V710394GB | PFS1130281 | 56' | 15' 2" |

Registered Owner:

JAMIE LYNN GALLIAN
16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA 92649

**Last Title Date:** 08/03/2021
**Last Reg Card:** 08/03/2021
**Sale/Transfer Info:** Price $.00 Transferred on 02/25/2021

Situs Address:

16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA 92649
Situs County: ORANGE

Legal Owner:

J-PAD LLC
21742 ANZA AVE
TORRANCE, CA 90503

**Lien Perfected On:** 01/14/19 15:22:00

Title Searches:

JANINE JASSO
PO BOX 370161
EL PASO, TX 79937

**Title File No:** LBM1081

JAMIE GALLIAN
16222 MONTEREY LANE SPACE 376
HUNTINGTN BCH, CA 92649

**Title File No:** LBM1081

JAMIE GALLIAN
16222 MONTEREY LANE SPACE 376
HUNTINGTN BCH, CA 92649

**Title File No:** LBM1081

0060

# STATE OF CALIFORNIA - DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT
## CERTIFICATE OF TITLE

### Manufactured Home

**Decal: LBM1081**

| Manufacturer ID/Name | Trade Name | Model | | DOM | DFS | RY |
|---|---|---|---|---|---|---|
| 90002    SKYLINE HOMES INC | CUSTOM VILLA | | | 05/29/2014 | 07/28/2014 | |
| **Serial Number** | **Label/Insignia Number** | **Weight** | **Length** | **Width** | **Issued** | |
| AC7V710394GB | PFS1130281 | 22,383 | 56' | 15' 2" | Aug 12, 2021 | |
| AC7V710394GA | PFS1130282 | 25,068 | 60' | 15' 2" | | |

**Addressee**

J-PAD LLC
21742 ANZA AVE
TORRANCE, CA  90503

**Registered Owner(s)**

JAMIE LYNN GALLIAN
16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA 92649

**Situs Address**

16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA 92649

**Legal Owner(s)**

J-PAD LLC
21742 ANZA AVE
TORRANCE, CA 90503

Lien Perfected On:        01/14/19 15:22:00

**IMPORTANT**

THE OWNER INFORMATION SHOWN ABOVE MAY NOT REFLECT ALL LIENS RECORDED WITH THE
DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT AGAINST THE DESCRIBED UNIT.  THE
CURRENT TITLE STATUS OF THE UNIT MAY BE CONFIRMED THROUGH THE DEPARTMENT

0061

DTN: 12339739

08122021 - 2

STATE OF CALIFORNIA
BUSINESS, CONSUMER SERVICES AND HOUSING AGENCY
DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT
DIVISION OF CODES AND STANDARDS
REGISTRATION AND TITLING PROGRAM



## LIEN SATISFIED

### SECTION I.        DESCRIPTION OF UNIT

This unit is a:

☑ Manufactured Home/Mobilehome ☐ Commercial Modular ☐ Floating Home ☐ Truck Camper

The Decal (License) No.(s) of the unit is: LBM1081

The Trade Name of the unit is: CUSTOM VILLA

The Serial No.(s) of the unit is: AC7V710394GB/AC7V710394GA

### SECTION II.        DEBTOR(S) NAME(S)

Name of Debtor(s): J-SANDCASTLE CO, LLC

### SECTION III.        LIENHOLDER'S CERTIFICATION

This is to certify that our/my lien in the name(s) of the debtor(s) shown above against the described
unit has been fully satisfied and has not been assigned to any other party.

I/We certify under penalty of perjury that the foregoing is true and correct.

Print or Type Name of Legal Owner or Jr. Lienholder (Lender):

J-PAD LLC or RONALD J. PIERPONT

Signature of Legal Owner, Jr. Lienholder (Lender) or their Authorized Agent:

*Ronald J. Pierpont*      Date 7/9/2021

| Address | 16222 MONTEREY LN. #376 | HUNTINGTON BEACH, | CA | 92649 |
|---|---|---|---|---|
| | Street Address or P.O. Box | City | State | Zip |

HCD RT 475.3 (Rev. 07/16)

0062



| | |
|---|---|
| DTN: | 13413446 |
| Decal: | LBM1081 |
| Unit ID: | 252606085 |
| Trans Type: | L/O Remove |
| Trans Date: | 08/06/2024 |
| Trade Name: | CUSTOM VILLA |
| Serial #: | AC7V710394GA, AC7V710394GB |
| Insignia # | PFS1130281, PFS1130282 |

Status Date:    08/08/2024    User Name:    GEREN, MARSHELLE

# STATE OF CALIFORNIA - DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT
## CERTIFICATE OF TITLE
### Manufactured Home

**Decal:** **LBM1081**

| Manufacturer ID/Name | Trade Name | Model | DOM | DFS | RY |
|---|---|---|---|---|---|
| 90002   SKYLINE HOMES INC - CLOSED | CUSTOM VILLA | | 05/29/2014 | 07/28/2014 | |

| Serial Number | Label/Insignia Number | Weight | Length | Width | Issued |
|---|---|---|---|---|---|
| AC7V710394GB | PFS1130281 | 22,383 | 56' | 15' 2" | Aug 09, 2024 |
| AC7V710394GA | PFS1130282 | 25,068 | 60' | 15' 2" | |

**Addressee**

JAMIE LYNN GALLIAN
16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA  92649

**Registered Owner(s)**

JAMIE LYNN GALLIAN
16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA 92649

**Situs Address**

16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA 92649

**IMPORTANT**
**THE OWNER INFORMATION SHOWN ABOVE MAY NOT REFLECT ALL LIENS RECORDED WITH THE
DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT AGAINST THE DESCRIBED UNIT.  THE
CURRENT TITLE STATUS OF THE UNIT MAY BE CONFIRMED THROUGH THE DEPARTMENT.** 0064

DTN: 13413446

08092024 - 2

```
1                    UNITED STATES BANKRUPTCY COURT

2              CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA

3                              --oOo--

4    In Re:                      )  Case No. 8:21-bk-11710-SC
                                 )
5    JAMIE LYNN GALLIAN,         )  Chapter 7
                                 )
6    Debtor,                     )  Santa Ana, California
                                 )  Tuesday, 1:30 P.M.
7    ----------------------------)  August 27, 2024

8                    TRANSCRIPT OF ZOOM PROCEEDINGS
9              BEFORE THE HONORABLE SCOTT CLARKSON
                    UNITED STATES BANKRUPTCY JUDGE
10

11   APPEARANCES:

12   The Debtor:              JAMIE LYNN GALLIAN, Pro Se
                              16222 Monterey Lane
13                            Unit #376
                              Huntington Beach, California 92649
14
     For the Trustee:         ERIC ISRAEL, ESQ.
15                            Danning Gill Israel &
                                Krasnoff, LLP
16                            1901 Avenue of the Stars
                              Suite #450
17                            Los Angeles, California  90067

18   The Trustee:             JEFFREY I. GOLDEN, ESQ.
                              Golden Goodrich, LLP
19                            3070 Bristol Street
                              Suite #640
20                            Costa Mesa, California  92626

21   For Hauser Bros.:        D. EDWARD HAYS, ESQ.
                              Marshack Hays, LLP
22                            870 Roosevel Avenue
                              Irvine, California  92620
23

24
     Proceedings produced by electronic sound recording;
25   transcript produced by transcription service.
```



P 888.272.0022  F 818.343.7119        BENHYATT   www.benhyatt.com   0065
Certified Deposition Reporters

```
 1   Court Recorder:          Tamika Law
                              U.S. Bankruptcy Court
 2                            Central District of California
                              Ronald Reagan Federal Building and
 3                            United States Courthouse
                              411 West Fourth Street
 4                            Santa Ana, California  92701-4593
                              (855) 460-9641
 5
     Court Transcriptionist:  Ruth Ann Hager, C.E.T.**D-641
 6                            Ben Hyatt Certified Deposition
                                Reporters
 7                            17835 Ventura Boulevard
                              Suite #310
 8                            Encino, California  91316

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Page                                                                    3

1              SANTA ANA, CALIFORNIA, TUESDAY, AUGUST 27, 2024

2                              1:42 P.M.

3                              --oOo—

4              THE COURT:  Let's call items #8.00 and #9.00 in

5     the Jamie Lynn Gallian matter.  I think Ms. Gallian is in

6     the courtroom.

7              Please come forward, Ms. Gallian and hello.

8              Let's give her time to come up to the podium.

9              MS. GALLIAN:  Good afternoon, Judge Clarkson.

10    Good to see you.

11             THE COURT:  Good afternoon, Ms. Gallian.

12             There are other appearances, first of all, on

13    #8.00?

14             MR. ISRAEL:  Yes, Your Honor.  This is Eric

15    Israel of Danning, Gill Israel & Krasnoff, LP, attorneys

16    for the Trustee.  The Trustee is also on the line and also

17    the Trustee's broker, Greg Bingham, is also on the -- is

18    also appearing.

19             THE COURT:  Very good.

20             Are there any other appearances?

21             MR. HAYS:  Yes, Your Honor.  Good afternoon.  For

22    creditor Hauser Bros., this is Ed Hays of Marshack Hays

23    Wood, LLP.

24             THE COURT:  Good afternoon, Mr. Hays.

25             Are there any other appearances?

Page                                                                          4

1          MR. GOLDEN:  Jeffrey Golden, Trustee, Your Honor.

2    Sorry.

3          THE COURT:  Hello, Mr. Golden.  Glad to see you.

4          Let's talk about item #8.00 first.  This is a

5    motion brought by the debtor to compel and issue an order

6    to the Chapter 7 Trustee and his attorneys to withdraw and

7    counsel the May 13, 2024 HCD application to transfer

8    certificate of title decal LBM1081 for zero consideration

9    to Danning Gill Israel and Krasnoff, LLP forthwith.

10          Ms. Gallian, please proceed.

11          MS. GALLIAN:  So, Your Honor, I starting meeting

12    with HCD back in January before I was aware of the

13    Trustee's orders in an adversary that I was not a part of.

14          So back in -- I believe it was May 1, 2024, I

15    hired the same broker because I knew that the Hause

16    unlawful detainer action was coming up and I believed that

17    the Court would -- could go two days on the UD, could

18    either say, Ms. Gallian, do you have X amount of dollars,

19    or, Ms. Gallian, we will give you 120 days to market and

20    sell the home because you own the home.

21          So that was the reason why the broker listed the

22    home for sale on the -- it was a -- some sort of a mobile

23    home website.  On May 15th Judge Smith again ruled in my

24    favor that I was entitled to my homestead.  I do have a

25    declared homestead that was filed pre-bankruptcy and then

Page                                                                          5

1  also because of the registration on the actual date of

2  bankruptcy filing, it was registered in the name of Jay

3  Sandcastle and that was a reason I believe it's going to

4  be -- I don't know if they're here, if -- I subpoenaed the

5  HCD.  I don't know if they are here or they're waiting in

6  another -- in the other case.  I'm not really sure exactly

7  which one.

8          However, the Housing Community Development takes

9  the releasing signature off of the back of the original

10  certificate of title and that's the date they go by, which

11  was 2/25/21.  The HCD then notifies the Orange County Tax

12  Assessor of that date as well.

13          I had obtained two notarized copies or letters, I

14  guess, from the actual second in command at the Orange

15  County Tax Assessor that Jamie Lynn Gallian had, indeed, a

16  homestead in the County of Orange since 2/25/21.

17          However, with -- oh, a lot of papering and a lot

18  of documents that gone back and forth, I guess now the

19  Court -- and Judge Smith also ruled now that I have an

20  automatic homestead, so not really sure what the difference

21  is, but that's okay.

22          So moving on, like I said, I've been working with

23  HCD.  HCD, whatever paperwork or request or whatever that

24  the Trustee's attorneys gave, they said that they gave --

25  the Trustee gave that back -- paperwork back in May, didn't

Page                                                                        6

1    reply to the -- I think it was like -- like something about

2    that all paper wasn't complete.  There were no fees filed

3    or anything like that.

4              So then when I came, they thought that I was

5    there continuing on that application and I said, no.  I

6    said, I'm there because I listed my home with a broker and

7    the broker wants this legal owner removed because, indeed,

8    the legal owner was removed by a lien satisfied HCD form

9    that was actually sent to HCD.  And on the August 3, 2021

10   certificate of registration for the manufactured home, it

11   does reflect Jamie L. Gallian.

12             However, in my own ignorance, I believed that the

13   title had said "and," the legal owner said "and," but then

14   I went back in the records and I was right, that on

15   2/22/2021 the program technician had wrote in a statement

16   of facts that it was supposed to be "and," that it was

17   supposed to be Ronald Pierpont and JPAD.

18             However, when the certificate of title was issued

19   and printed and I received it, it said "or."  So therefore,

20   when Mr. Pierpont filed the lien satisfied and sent with my

21   documents also up to HCD, they removed JPAD.

22             However, again, in my own ignorance when I

23   received the August 6, 2021 certificate of title in the

24   mail, me believing that knowing that Mr. Pierpont is just a

25   manager, he's not a member of JPAD, I panicked because I

Page                                                                    7

1   had already filed bankruptcy and I called HCD and drove out

2   to Riverside and had JPAD put back on, just PJAD with a

3   January 14, 2019 date.  That January 14, 2019 date is a UCC

4   filing.  There were three of them done.  They're in the

5   record.  I believe everybody is familiar with them because

6   they were set aside or something was done with them in the

7   case that I wasn't a party to.

8           So the statement of errors that I wrote and I

9   took all the documents to HCD, the HCD has, again, removed

10  JPAD.  There is no lien.  And they have recorded the

11  certificate of title.  I believe the date and I believe

12  that I sent a copy of -- to everybody with the title

13  search.  I believe it was like 8 -- August 8th.  It was

14  like three weeks ago.

15          So I guess my -- now, my motion is kind of moot

16  because I'd asked the HCD to appear and they sent me 110

17  pages of the entire file, which was not my intent of the

18  subpoena.  The intent of the subpoena was to explain to

19  myself or anybody else familiar with this case what the

20  difference is between what a releasing signature and issue

21  date for HCD.  And an issue date is only the date that

22  Sacramento HCD prints three pieces of paper.  They print a

23  registration card that is to be kept in the mobile home at

24  all times, they print a certificate of registration that

25  goes to the registered title holder, and they also

Page                                                                        8

1  sometimes print a third document, which goes to the legal

2  owner.

3          So at this time I'm the holder of the certificate

4  of title -- or yes.  Certificate of registration for the

5  manufactured home.  So I guess that my motion (phonetic) is

6  moot.

7          THE COURT:  Thank you very much.

8          Who would like to reply?

9          MR. ISRAEL:  Your Honor, I will.  I heard the

10 debtor seemed to acknowledge that the motion is moot.  The

11 relief request is set forth in our pleadings.  It doesn't

12 leave a match what happened in this particular case.  No

13 application for transfer was made.  A letter was sent to

14 the registrar because, again, they maintain certificated

15 documents that doesn't maintain title advising of the entry

16 by Your Honor in that adversary proceeding of the transfer

17 of title into the Trustee's name and avoidance of certain

18 liens, just putting them on notice in order to protect

19 property of the estate, Your Honor.

20         It was nothing that was done improperly.

21 Actually, transferring title wouldn't have been improper

22 either because we had the final words from your court --

23 from Your Honor, but she filed this motion and we opposed

24 it and -- should deny it.

25         THE COURT:  Does anyone anything else to add?

Page                                                                9

1          MR. HAYS:  Your Honor, this is Ed Hays.  I'd had

2    a couple of comments briefly.

3          The debtor admitted in her comments to the Court

4    that she made submissions to HCD attempting to affect the

5    title.  And in the papers filed in connection with these

6    matters, the debtor -- it's indicated in the evidence that

7    the debtor had -- retained a broker and had listed the

8    property for sale and that the -- when the Trustee's

9    counsel contacted the debtor and the broker, they both

10   refused to take down the listing.

11         I checked Zillow right now as we were waiting for

12   the matter to be called and the property is still listed

13   for sale.  It's listed for sale by owner and the debtor's

14   cell phone number is the number for contact.

15         The debtor is clearly acting in contempt of this

16   court's order, including the automatic stay, by taking

17   actions affecting property of the estate and the actions

18   taken by the Trustee to protect the estate as the estate's

19   sole representative are completely proper and appropriate.

20   And we would join in the request that the motion be denied.

21         THE COURT:  All right.  Thank you very much.

22         MS. GALLIAN:  May I respond, Your Honor?

23         THE COURT:  Well, let me respond.

24         MS. GALLIAN:  Yes, sir.

25         If you are in contempt of this Court's order by

Page                                                                10

1  continuing to interfere with this sale of this property or

2  the administration of this estate, I'm going to be in the

3  future looking into that very carefully and if necessary,

4  holding you in contempt.

5          MS. GALLIAN:  Yes, sir, I understand.

6          THE COURT:  Now that you're warned --

7          MS. GALLIAN:  Yes, sir.

8          THE COURT:  -- tell me what -- like, you've got

9  three minutes.

10         MS. GALLIAN:  Okay.  So I think part of the

11 problem is, is that there were -- everybody was included in

12 this adversary, except for me.  So the only information

13 that I had was, what Judge Smith's final May 15, 2024 order

14 said.  It said that I was entitled to my full homestead.

15 Now, regardless of that, somebody could have picked up the

16 phone and said, hey, this is what we want to do now.

17         This case is three-and-a-half years old, Your

18 Honor.  I have never disobeyed or disrespected this court

19 or any of the gentlemen here.  I have cooperated.  I have

20 been trying to find a solution since the day I moved there

21 and trying to get out of that community, since the day.

22 Every time I hire somebody they have to give a 60-days'

23 notice to the H -- or the Rancho Del Rey office.  The

24 Rancho Del Rey office then says, she can't sell it in

25 place; she has to move it.  So it's a lot of

Page                                                              11

1  miscommunication.

2           I've meant no disrespect.  I did contact the

3  broker immediately after the Danning Gill sent them a

4  letter and I said, "I have listed it for sale by owner on

5  Zillow.  You need to cancel the contract."  I said -- and

6  then he said he was going to sue me for the contract that I

7  signed with them before I knew any of this.  So I haven't

8  heard from him.

9           He obviously took the listing down, so the issue

10 seems to be that I worked two years to get a homestead.  I

11 got the homestead and now the Trustee and his attorneys are

12 saying that, well, now we're going to hire a real estate

13 broker, but yet in the car today over they're telling me,

14 well, we're only going to sell the home.

15          Well, how is that possible?

16          THE COURT:  Let me stop you for a second.

17          MS. GALLIAN:  Yeah.

18          THE COURT:  Do you think your homestead exemption

19 is at risk?

20          MS. GALLIAN:  I do, sir.

21          THE COURT:  Well, okay, stop right there.

22          Mr. Hays -- I'm sorry, Mr. Israel, is her

23 homestead exemption at risk?

24          MR. ISRAEL:  Well, Your Honor, there's an avoided

25 lien that the Trustee avoided at the adversary proceeding

Page                                                           12

1   she's talking about and that lien is avoided and preserved.

2   It was a consensual lien, so it comes ahead of the

3   homestead exemption.  There -- it looks like, as we said in

4   the papers, there would be some, but not a lot of equity in

5   the --

6           THE COURT:  Okay.  You misunderstood my question.

7           MR. ISRAEL:  I'm sorry.

8           THE COURT:  Is it legally -- is it legally at

9   risk?  Whatever amount it is, is it at risk?

10          MR. ISRAEL:  No.

11          THE COURT:  That is the Court's position also.

12  Whatever her -- she's entitled to is not at risk.

13          So Ms. Gallian, do you understand that whatever

14  you're entitled to under a homestead, it's not at risk?

15          MS. GALLIAN:  Okay.  However, then I just

16  heard --

17          THE COURT:  Now, we're going to stop this.

18          MS. GALLIAN:  Okay.

19          THE COURT:  Your motion is denied --

20          MS. GALLIAN:  Right, it's moot.  Yeah.

21          THE COURT:  -- and -- excuse me for a second.

22  Your motion is denied.

23          Mr. Israel, would you please prepare an order

24  reflecting that the Court has reviewed the pleadings and

25  has adopted the views of the Trustee with respect to this

Page                                                                    13

1   motion and has also heard that the movant believes that her

2   own motion is moot and, frankly, I agree.  So would you

3   please lodge that?

4            Now, I'm going to call item #9.00 and this is the

5   issue with respect to the employment of the broker.  Same

6   appearances?

7            MR. ISRAEL:  Yes, Your Honor.

8            MS. GALLIAN:  Yes, Your Honor.

9            THE COURT:  All right.  Who would like to discuss

10  the motion of employing the broker?

11           MS. GALLIAN:  May I speak again, Your Honor?

12           MR. ISRAEL:  Yes.

13           THE COURT:  Oh, wait, wait.

14           MS. GALLIAN:  Oh.

15           THE COURT:  Mr. Israel, would you like to address

16  it?

17           MR. ISRAEL:  Yes, Your Honor.  The -- this is an

18  application to employ a real estate broker.  We filed a

19  motion maybe nine months ago, twelve months ago.  Your

20  Honor pointed out that there were some -- there was a

21  title issue and some lien issues, and the Trustee brought

22  an adversary proceeding to address those issues.  We

23  believe we now have all our ducks in a row.  We have re --

24  basically, refiled the employment application.  Hiring

25  professionals is allowed under the Code subject for

Page                                                              14

1   approval and this is a broker who's experienced who's

2   looked at the comps for a manufactured home.  The Trustee

3   will not be selling the leasehold, although we understand

4   that the homeowners association will sign a new lease with

5   any qualified bidder -- or seller and that will be a

6   condition to the Trustee through escrow to sell the

7   manufactured home.

8           THE COURT:  Now let me ask you this and I'm

9   asking you this for the benefit of Ms. Gallian.

10          By approving this motion today does it *de facto*

11  sell the house or sell the unit?

12          MR. ISRAEL:  No, Your Honor.  This is just to

13  employ a broker.

14          THE COURT:  That's right.  All we're doing is a

15  procedural ministerial act of allowing a broker to try to

16  (indiscernible), to sell the unit.  Is that correct?

17          MR. ISRAEL:  Yes, Your Honor, we will need her

18  cooperation.  She has a duty under the --

19          THE COURT:  Oh, absolutely.  But I'm just making

20  sure that she understands that we're not selling anything

21  today.

22          MR. ISRAEL:  Today no sale.  No (indiscernible).

23          THE COURT:  And now that you've mentioned it,

24  what kind of cooperation do you expect from Ms. Gallian?

25          MR. ISRAEL:  Your Honor, the broker is here, but

Page                                                                    15

 1  typically what we would ask for is 24 hours' notice to be

 2  able to do a showing and periodically he may want to do an

 3  open house.

 4          Mr. Bingham, are you able -- I know you're --

 5  looks like you're muted right now.  Are you able to unmute

 6  and ask -- and answer if that is adequate?

 7          MR. BINGHAM:  That is adequate, yes.  We would

 8  like very much to have a 24-hour notice.  We can do 48, but

 9  our preference is to do 24.

10          THE COURT:  All right.  How do you intend on

11  contacting the debtor to give that notice?

12          MR. BINGHAM:  Ideally by phone, by text.  Email

13  seems not to work as well, but we can do that as well.

14  It's just that seems to get delayed.

15          THE COURT:  Now, do you have a telephone number

16  or a text number?

17          MR. BINGHAM:  I do not, yeah.

18          THE COURT:  Okay.  So you're unable to provide a

19  telephone call or a text to Ms. Gallian to give that 24-

20  hour notice, correct?

21          MR. BINGHAM:  Currently.

22          THE COURT:  Okay.  How do you intend on acquiring

23  that information?

24          MR. BINGHAM:  I'd ask the Trustee's attorney to

25  obtain it for me or I'd ask Ms. Gallian directly to provide

Page                                                                    16

1   it.

2              THE COURT:  Well, let's start with Mr. Golden.

3              Mr. Golden, do you have that information?

4              MR. GOLDEN:  Yes, Your Honor.

5              THE COURT:  Can you transmit it to Mr. Bingham?

6              MR. GOLDEN:  Yes, Your Honor.

7              THE COURT:  Okay.  Solved.  Problem solved.

8              Now, do you want to do an open house?

9              MS. GALLIAN:  They're not allowed in the park,

10  sir.

11             THE COURT:  Okay.  I didn't ask you to interrupt,

12  Ms. Gallian.

13             MR. BINGHAM:  I would not do open house if --

14             THE COURT:  Do you want to do -- it's a yes-or-no

15  question.

16             MR. BINGHAM:  It's a no.

17             THE COURT:  Do you want to do an open house?

18             MR. BINGHAM:  No, sir.

19             THE COURT:  No, you don't want to do an open

20  house.  You see how easy that was?  Okay.  Very good.

21             Now, Ms. Gallian, your turn.  Tell us why I

22  shouldn't -- shouldn't employ the broker?  I don't want you

23  to tell me why we shouldn't sell the house.

24             MS. GALLIAN:  Correct.  I understand.

25             THE COURT:  You don't need to tell me anything

P 888.272.0022  F 818.343.7119        BENHYATT        www.be...tt.com   0080
                                       Certified Deposition Reporters

Page                                                              17

1   else.  Why shouldn't you employ the broker?

2          MS. GALLIAN:  I understand, sir.  The same

3   reasons that I gave in my doc number 208 are the exact same

4   reasons that I would use to argue this case.

5          THE COURT:  Fine.  And I know those arguments

6   and, therefore, you don't have to say anything else.

7          MS. GALLIAN:  Well, I -- may I say something

8   else, Your Honor?

9          THE COURT:  Yeah, you can add, but I don't want

10  you to repeat things --

11         MS. GALLIAN:  Right.  No, I don't want -- right,

12  exactly, is I -- what I'm saying is the exact same reasons

13  as -- my homestead is clearly covers --

14         THE COURT:  It has nothing to do with the

15  homestead --

16         MS. GALLIAN:  I understand.  I understand.  I --

17         THE COURT:  Now --

18         MS. GALLIAN:  Okay.

19         THE COURT:  I want you to very carefully listen

20  to me.

21         MS. GALLIAN:  Yes, sir.

22         THE COURT:  What I want you to do, is tell me why

23  I shouldn't approve the application for the employment of

24  the broker.  Not -- I don't want my -- I don't have an

25  issue with the homestead, I don't have an issue with

Page                                                                      18

1   selling the house.  That's not important to me right now.

2            MS. GALLIAN:  Okay.

3            THE COURT:  Just tell me why I shouldn't approve

4   the employment of the broker.

5            MS. GALLIAN:  Well, I believe, Your Honor, that I

6   am able and I have been attempting, okay, to show the

7   house.  I have 45 pictures listed on Zillow.  I get

8   probably 50 calls a day.  I have no problem with showing it

9   and I think that it would save the estate money.

10            THE COURT:  Okay.  Mr. Israel, is she interfering

11   with the administration of the bankruptcy estate by doing

12   any of this?

13            MR. ISRAEL:  Yes, Your Honor.  We sent a letter

14   to her and her broker, but also directly to her,

15   Ms. Gallian, saying cease and desist.  In fact, it's an

16   exhibit to a -- I believe it's a reply we filed.

17            THE COURT:  Okay.  Stop right there.

18            MR. ISRAEL:  Yes.

19            THE COURT:  I want you to do this.  I want you --

20   I am ordering you to file a motion for an order to show --

21   not a motion.  An order to show cause why the broker and

22   Ms. Gallian should not be held in contempt for interfering

23   with this bankruptcy estate and get a hearing date for

24   about 30 days from now.  And we're going to bring that

25   broker into court and we're going to bring Ms. Gallian back

Page                                                                19

1   and we're going to find out if she's interfering.

2          And I will tell you that, Ms. Gallian, everything

3   you've just said about you listing and you hiring a broker,

4   you're interfering with this bankruptcy estate and I will

5   hold you in contempt at that next hearing if I actually

6   make the determination.

7          So you have a big choice here.  You call the

8   broker and you tell him he's going to come to court, too,

9   and he's going to have to pay a lot of money if he is held

10  in contempt.  If he wants the whole -- pay a lot of money

11  to do that, that's okay with me, but Mr. Israel is now

12  going to create an order to show cause why you and that

13  broker should not be held in contempt for interfering with

14  the estate.

15         MS. GALLIAN:  Your Honor, if I may, I have --

16         THE COURT:  No, no --

17         MS. GALLIAN:  -- communicated with the Trustee

18  and that -- that broker took everything down that -- he

19  did.  It was completely separate and it was under a

20  contract.  There is no contempt.

21         THE COURT:  Then he can come and explain why he's

22  not in contempt.  All right.  And you can come and explain

23  why you're not in contempt also.

24         Now, do you have any other reason why I should

25  not approve this application for employment under the real

Page                                                                    20

1   estate broker?

2          MS. GALLIAN:  Your Honor, I think that my

3   homestead covers it and I think that it is -- I live there.

4   It's my personal residence.  Okay.  My family lives there.

5          THE COURT:  The motion is granted.

6          MS. GALLIAN:  Okay.

7          THE COURT:  (Indiscernible) the statements of

8   Ms. Gallian are not helpful and, more importantly, they're

9   mostly non-sensical.

10         And so what I want you to do is, Mr. Israel, just

11  get that order to show cause because I don't want anymore

12  interference.  And, in fact, I will -- if I -- that

13  Mr. Bingham is being somehow interfered with by the debtor

14  or any outside person, I'm going to hold them in contempt

15  and I'm going to fine them a considerable amount of money.

16         Now, Ms. Gallian, you don't seem to care about

17  being held in contempt.

18         MS. GALLIAN:  Your Honor --

19         THE COURT:  But I assure you that a broker does.

20         MS. GALLIAN:  Your Honor, please --

21         THE COURT:  Now, next, this case --

22         MS. GALLIAN:  Your Honor, please, that is not the

23  case here, sir.

24         THE COURT:  -- thank you all for coming.  Yes,

25  but you can argue that next month.

Page                                                              21

1          MS. GALLIAN:  Your Honor, why would we do that?

2    Why?

3          THE COURT:  Well, you --

4          MS. GALLIAN:  Wait.  There's something that's got

5    lost in the transmission here because I complied -- okay, I

6    spoke to Mister --

7          THE COURT:  We're going to now -- the Court is

8    now concluded.  Thank you very much.

9          Is -- Mr. Hays, do you have anything else to add?

10         MR. HAYS:  Nothing further, Your Honor.  Thank

11   you.

12         THE COURT:  Ms. Israel, do you have anything else

13   to add?

14         MR. ISRAEL:  No.

15         THE COURT:  Do you know what you're supposed to

16   do?

17         MR. ISRAEL:  Yes, Your Honor.

18         THE COURT:  Okay.  Take care.  Thank you.

19         ATTORNEYS:  Thank you, Your Honor.

20   (End at 2:08 p.m.)

21                        * * * * * * * *

22

23

24

25

Page                                                                    22

1            I certify that the foregoing is a correct

2    transcript from the electronic sound recording of the

3    proceedings in the above-entitled matter.

4

5    *Ruth Ann Hager*

6    _____            Date:   9/20/24

7    RUTH ANN HAGER, C.E.T.**D-641

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1  Jamie Lynn Gallian
2  16222 Monterey Lane, Space #376
   Huntington Beach, CA 92649
3  Telephone: (714) 321-3449
   jamiegallian@gmail.com
4
   IN PRO PER
5

6

7

8              UNITED STATES BANKRUPTCY COURT

9       CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

10

11  JAMIE LYNN GALLIAN,               Case No: 8:21-bk-11710-SC

12                  Debtor.           Chapter 7

13                                    **OPPOSITION TO APPLICATION OF**
                                      **THE CHAPTER 7 TRUSTEE TO**
14                                    **EMPLOY REAL ESTATE BROKER**
                                      **COLDWELL BANKER REALTY AND**
15                                    **AGENTS WILLIAM FRIEDMAN AND**
                                      **GREG BINGHAM PURSUANT TO 11 U.S.**
16                                    **§§ 327 AND 328;    DOC    128**
                                      **DECLARATION    JAMIE    LYNN**
17                                    **GALLIAN ISO OF OPPOSITION.**

18
                                      Hearing
19                                    Date: September 13, 2022
                                      Time: 11:00 a.m.
20                                    Dept.: 5C – Via ZoomGov

21     TO THE HONORABLE SCOTT CLARKSON,

22  **OFFICE OF THE UNITED STATES TRUSTEE AND ALL PARTIES IN INTEREST:**

23          Debtor, Jamie Lynn Gallian, (hereinafter "DEBTOR") respectfully submits the following
24
25  opposition to the Trustee's application to employ a real estate broker to sell her personal residence
26  at 16222 Monterey Lane, Space #376, Huntington Beach, CA 92649 (hereinafter the "Property").
27  Debtor purchased and occupied the residence since November 2018 and currently lives in the home.
28      1. The basis for the opposition is the fact that the Honorable Erithe A. Smith has ruled that

                                      1
                              OPPOSITION TO APPLICATION                        0087

the Property is not part of the bankruptcy estate of Debtor said Property having been registered in the

name of J. Sandcastle LLC as of the petition date of July 9, 2021 and that the Debtor's acquisition of

title to the Property occurred post-petition. Debtor disagrees.  As a result, Debtor was determined not

to have a homestead exemption. (Judge Smith's Order of August 5, 2022 is attached hereto as **Exhibit**

**A** for this court's ready reference.) J. Sandcastle Co LLC is a separate entity that is not a party to this

proceeding and there has been no determination that the transfer to Debtor was improper in any way.

**NOTE:**   Debtor strenuously disagrees with the 7.21.22 TR of Judge Smith's ruling and a Motion For

Reconsideration DOC 157, is set to be heard on Noticed Hearing, DOC 200, September 22, 2022

before Judge Erithe A. Smith.  Houser Bros and Debtor Stipulated to Continue the MOT. Lodg.ATT

        At a minimum this application is premature and should be denied on that basis alone.

      2.  If Judge Erithe A, Smith's ruling survives the Reconsideration Motion DOC 157,  and any

subsequent appeal by Debtor, then the Property is not part of the estate.   Most property acquired

post-petition by a debtor does not become part of the bankruptcy estate and is not subject to prepetition

creditor claims. *Patrick A. Casey, P.A. v. Hochman* (10th Cir.1992) 963 F.2d 1347,1351. Exceptions to

that rule are found in 11 USC 541 (a)(5) and none here apply. (Property acquired by bequest, devise or

inheritance; property acquired through marital settlement agreement or marital dissolution judgment or,

life insurance or death benefits within 180 days of the petition.)

      3.  Judge Smith's ruling was obtained by way of 5/12/22, Motion by Interested Party (Houser

Bros.) DOC 95, and the Trustee bringing this Application, joined in the interested parties motion on

6/30/22, DOC 128.  As matters currently stand (subject to change in the near future) the Property is

not part of the estate and is Debtor's personal residence she resides in, and owned by Debtor.

Therefore, the Trustee's Application DOC 162, to hire a broker should be DENIED, as the Property

[is not] subject to creditor's claims as a result of the relief sought before Judge Erithe A. Smith, and

joined in by the Chapter 7 Trustee on June 30, 2022, DOC 128. Debtor believes the Trustee may be

[attempting] a §724(b) distribution scheme.

Dated: August 26, 2022          By:   *Jamie Lynn Gallian*

                          Respectfully submitted,

             2      Jamie Lynn Gallian, In pro per

## DECLARATION OF JAMIE LYNN GALLIAN

I, JAMIE LYNN GALLIAN, DECLARE under penalty of perjury by the Laws of The State of California, the following to be true and correct to the best of my ability. If called upon to testify, I would and could provide testimony to the same. I file this declaration In support. I am not an attorney and am filing this opposition IN PRO PER.

Interested Party and Movant Houser Bros Co. dba Rancho Del Rey Mobilehome Estates filed a MOT Objection, DOC 95, to Debtors prepetition Declared Homestead and Debtor homeowners exemption listed in Debtor's First Amendment Amended Schedule C California homestead exemption in the amount of $600,000 scheduled by debtor Jamie Lynn Gallian (Debtor). DOC 16, Debtor filed a Declared Homestead with the Santa Ana Clerk Recorders Office, County of Orange, prepetition. DOC 74

The Chapter 7 Trustee, Jeffrey Golden, along with Interested Parties Huntington Beach Gables Homeowners Association joined in the Motion Objecting to Debtors Homeowners Exemption. No claims were raised in the MOT that the property in question is not the Debtors personal residence, since November 2018. Debtor and her family still live in the home.

If the Court had deemed Debtors' homestead exemption to be valid, then the secondary plan by interested parties Houser Bros Co, and the joinders back up plan was sought to limit her homeowners exemption to the statutory cap of $170,675 under § 522(p)(1). Debtor resides in and purchased the property in question on November 1, 2018 and 11 U.S.C. 522 (p)(2)(b) is applicable to the proceeds from her sale of her previous home on October 31 2018, used to purchase Debtors 2014 Manufactured Home.

Interested parties Houser Bros Co dba Rancho Del Rey, The Huntington Beach Gables HOA and former Gables HOA attorney Janine Jasso, argued that Debtor acquired an interest in the 2014 Skyline Manufactured Home property within the meaning of §

522(p)(1) because the LLC by releasing signature on the Certificate of Title, transferred registration back to Debtor, on February 25, 2021, for no consideration, during the 1215–day period preceding the date of Debtor's Chapter 7 Petition on July 9, 2021, DOC 1.

Debtor asserts she qualified for the homeowners exemption because the home is where debtor has lived for several years and currently resides since acquiring the property on November 1, 2018, with the funds from the home she sold October 31, 2018, under the same Unexpired 80-year Ground Leasehold, burdening Parcel 1 & Parcel 2, APN 178-011-01, recorded December 6, 1979. in the Records of the Clerk Recorder, Orange County, Document No(s). 8346 & 8347.

Debtor also asserted that the limitation under § 522(p)(1) was not triggered since she retained a beneficial and equitable interest in the Unit and the Ground Leasehold real property at all times despite transfer of the HCD Certificate of Title Registration of the Personal Property LBM1081, a 2014 Manufactured Home to and from the LLC with CA Department of Housing and Community Development due to negative effects put upon debtor by Houser Bros Co dba Rancho Del Rey Mobilehome Estates.

On July 21, 2022, the bankruptcy court posted a TR, sustained Interested party Houser Bros Co dba Rancho Del Rey Mobilehome Estates MOT Objecting to Debtors Homeowenrs Exemption, with joinders The Huntington Beach Gables Homeowners Association and former HOA attorney Janine Jasso.
The Chapter 7 Trustee, Jeffrey Golden joined the objection to Debtors Homestead Exemption on June 30, 2022, DOC 128, without specific supporting argument.

Debtor timely moved for Reconsideration set on calendar, August 18, 2022,  DOC 157, continued to September 22, 2022, upon an Agreed Signed Stipulation for Debtor to Dismiss Her Appeals without prejudice, at the BAP and District Court, August 18, 2022, on the Record with Honorable Erithe A. Smith, finalized and signed Stipulation between Houser Bros Co attorney D.

Edward Hays and Debtor, so Honorable  Erithe A. Smith can consider Debtor's Motion for Reconsideration on the Merits aftert the Stipulated and Continued hearing August 18, 2022, to September 22, 2022.

The Chapter 7 Trustee, Attorney Jefferey I Golden, filed Application of The Chapter 7 Trustee To Employ Real Estate Broker Coldwell Banker Realty And Agents William Friedman And Greg Bingham Pursuant to 11 U.S.C. §§ 327 and 328: Memorandum Of Points And Authorities; and Declarations Of William Friedman And Greg Bingham In Support on July 28, 2022,  DOC 162, and DOC 166.  Trustee's corrected Notice of Hearing was filed on August 22, 2022, DOC 195.  Debtor recorded a Declared Homestead pre-petition, with the Office of the Clerk Recorder, Co. of Orange, DOC 74.

"The Debtor claimed a homestead exemption in the Property" (Trustee Appl. Pg. 2, Line 21) in her FIRST AMENDMENT Amended Schedule C, DOC 16.
The Chapter 7 Trustee's Application seeks to sell the Debtor's personal residence (Trustee Appl, pg. 2 line 19) she has lived in since November 1, 2018, DOC 1, and use the proceeds to "pay claims of creditors and expenses of administration" (Trustee Appl. Pg. 2, Line 28) and a dividend, DOC 142, to the Interested Parties and their unsecured claims namely, The Huntington Beach Gables Homeowners Association and Interested Party Houser Bros Co dba Rancho Del Rey Mobilehome Estates against "the equity in the Property upon further court order" ("Trustee Appl. Pg. 2, Line 18) or portion of the sale proceeds to Debtor's estate, assuming there is anything left.

At its most basic level, a Chapter 7 trustee's job is to liquidate the property of a debtor's estate and then distribute the proceeds among the debtor's creditors pursuant to the Bankruptcy Code's priority scheme. 6 COLLIER ON BANKRUPTCY ¶ 700.04 (16th ed. 2021).

The Trustee's Application to Employ Real Estate Broker…DOC 162, and ultimately "administer the equity in the Property upon further Court Order" a precursor to a subsequent MOTION to Sell the personal residence debtor resides in with her family, than the [Trustee's Application] appears to readily disclose or the Trustee's Joinder MOT.

This Trustees Application DOC 162, quickly becomes this Courts more complicated consideration and decision than the basic concepts.

Debtor believes the sale of the Debtor's personal residence she resides in and has for years, violate the core principles of bankruptcy law, and the Debtor prays the court deny Trustee's Application DOC 162, and a looming subsequent MOT to Sell and the proposed transaction to sell debtors home to pay…. "…expenses of administration." (Trustee Appl. Pg. 2 Line 28.)

A Chapter 7 trustee only may seek to sell a debtor's real property when there is available equity over any Perfected Claim on the face of California Certificate of Title secured by the property and any exemptions available to the debtor.

The debtor is keenly aware of the bankruptcy court TR on 7/21/2022, that the Property [is not] part of the bankruptcy estate of Debtor said Property having been registered in the name of J-Sandcastle Co LLC as of the petition date of July 9, 2021. TR on 7/21/2022,

Bankruptcy trustees (like executing judgment creditors outside bankruptcy) ordinarily must satisfy liens secured by the property and pay a debtor's exemption prior to reaching funds available for paying their administrative claims and distribution to the rest of the creditor body. **See DeGiacomo v. Traverse (In re Traverse), 753 F.3d 19, 29 (1st Cir. 2014)** ("Bankruptcy courts have defined the equity that justifies a sale of property, consistently and explicitly, in one way: the value remaining for unsecured creditors above any secured claims and the debtor's exemption." (citations omitted)).

Using the Debtor's estimate for the value of the Debtor's home, DOC 1, there does not appear to be any equity in the property over Perfected Face of the Certificate of Title.

The Debtor scheduled the value of her residence at 16222 Monterey Ln. Unit 376, Huntington Beach, CA 92649, in Huntington Beach, California at $235,000.00 based on the last

24 months of recorded comparable home sales within the Rancho Del Rey Mobilehome Park and within Skandia Mobilehome Park.  The Orange County Tax Assessor listed the 2021-2022 tax value at $79,000.00 with a $-7,000.00 homeowners exemption in Orange County, and the Trustee reports in his Motion that a realtor valued the 2014 Skyline Manufactured Home installed pursuant to Health & Safety Code 18551§§, as personal property, at $300,000.00, after an exterior-only review.

The Debtor disclosed in her DOC 1, a 11/16/2018, Security Agreement & Promissory Note with a balance of $225,000.00 at 5.5% interest per year, Manufactured-Home Transaction UCC Financing Statement Filing Date 01/14/2019 09:10a.m., Document Number 76027940003, Filing Number 19-7691916827.  The Trustee's Application does not disclose whether the Trustee verified a payoff.

This would usually be the end of the analysis for a Chapter 7 trustee, and any Application to Employ and any subsequent Motion to Sell the Debtors home would end up in front of the Court.

Even using the Trustee's numbers in his Application and without considering the Debtor's homestead exemption, MOT for Reconsideration set on September 22, 2022, there does not appear to be any equity available for the Debtor's estate, as the total amount subject to liens ($225,000.00) + (approximately $20,000, in interest) exceeds the value of the property as estimated by the Trustee's realtor and debtors homestead exemption and any potential final sales price.

Since there is no equity available for the estate, the Trustee should not normally pursue a sale.   If a Chapter 7 Trustee wanted to sell the property despite the lack of equity, the court would not let him, as courts do not allow trustees to administer bankruptcy estates solely for the benefit of secured creditors. See Joseph v. Cooper, 539 B.R. 489, 497 (W.D.N.C. 2015) ("In order to authorize the sale, the Bankruptcy Court must determine whether such a sale would benefit the estate after considering any encumbrances and the debtors declared homestead filed prepetition.

A sale benefits the estate when the proceeds generate equity that can be distributed among secured creditors." (citing Reeves v. Calloway, 546 F. App'x 235, 241 (4th Cir. 2013))); In re Fontana, Ch. 7 Case No. 14-30773, 2015 Bankr. LEXIS 3771, at *4 (Bankr. W.D.N.C. Nov. 4, 2015) ("This result is consistent with the longstanding principle that Chapter 7 trustees are not to pursue claims for individual creditors." (citing In re Miller, 197 B.R. 810, 814–15 (W.D.N.C. 1996))); In re Marko, Ch. 7 Case No. 11-31287, 2014 WL 948492, at *5 (Bankr. W.D.N.C. Mar. 11, 2014)

"The Bankruptcy Code generally contemplates that over encumbered property [not be] sold." (citing 11 U.S.C. § 363(f)(2).

Since there does not appear to be any equity in the Debtor's residence, the Trustee appears to be attempting a different slight of hand and may be potentially successful in an attempt invoking a Chapter 7 exception to the normal order of distribution of sale proceeds as part of the justification for this Application and then a looming subsequent MOT for proposed Sale.

Section 724(b) of the Bankruptcy Code allows Chapter 7 trustees to subordinate some types of tax liens in order to pay particular priority claims. 11 U.S.C. § 724(b); COLLIER ¶ 724.03.  Debtor is not currently aware of any tax liens by the IRS.

This section of the U.S.C. is an unusual provision in the Bankruptcy Code that allows a Chapter 7 trustee to administer encumbered property for the benefit of certain priority claimants and includes an alternate distribution scheme. See COLLIER ¶ 724.03[5], [7].

Distributions pursuant to the alternate distribution scheme begin as they would without § 724(b), by paying any liens senior to the tax lien that will be subordinated. § 724(b)(1).

The alternate distributions begin at the next step, as claimants holding certain types of priority claims [substitute in] for the tax lien to the extent of the tax lien. § 724(b)(2).

Third, the tax lien is paid to the extent that it exceeds the payments to priority creditors under § 724(b)(2). § 724(b)(3).

Next, any liens that are junior to the tax lien are paid. § 724(b)(4).

To the extent that the subordinated tax lien has not already been paid, it is satisfied after the junior liens. § 724(b)(5).

Finally, any remaining proceeds go to the debtor's estate. § 724(b)(6).

Since there are [no tax liens] against the Debtor's residence in this case, Trustee's potential undisclosed attempt [is not] appropriate for subordination pursuant to § 724(b).

Since this Debtor does not owe any tax liens, the [Trustee's] slight of hand becomes the [one significant potential exception], as Debtor does not owe any of the types of priority claims that can be paid pursuant to § 724(b). See § 724(b)(2) (listing, by reference to 11 U.S.C. § 507, certain priority claims, including domestic support obligations and wages, salaries, or commissions owed, that can be paid ahead of the subordinated tax claims).

The one type of priority claim that the Trustee [would be] able to pay is [his own] [compensation], which would be entirely (or at least primarily) related to the sale. See id. (including the administrative expenses of a Chapter 7 trustee pursuant to § 507(a)(1)(C) and 507(a)(2)).

A corollary of the rule against allowing trustees to administer estates with no available equity, and a problem for the Trustee here, is [not] to allow trustees to potentially dupe this Court, and potentially administer this estate for their own benefit. See In re Sunbum5 Enters., LLC, Ch. 7 Case No. 09-14839, Adv. Nos. 10-1268, 10-1269, 2011 WL 4529648, at *9 (M.D. Fla. Sept. 30, 2011) ("[T]he recognized purpose of § 554(b) is to prevent trustees from unnecessarily administering assets that bring no value to the estate and to thwart the practice of trustees increasing their own commissions by not abandoning valueless property on their own." (citing In re Paolella, 79 B.R. 607, 609 (Bankr. E.D. Pa. 1987))); COLLIER ¶ 704.02[1] ("[T]he legislative history of the Code made clear Congress's displeasure with prior practices under which trustees' administration of 'nominal asset cases' benefited only the trustees themselves."

(citing H.R. REP. No. 595, 95th Cong., 1st Sess. 93 (1977))).   But see In re Reeves, Ch. 7 Case
No. 10-2562-8, 2011 WL 841238, at *3 (Bankr. E.D.N.C. Mar. 8, 2011), aff'd sub nom. Reeves
v. Callaway, No. 11-CV-280, 2012 WL 10180780 (E.D.N.C. Aug. 14, 2012), aff'd 546 F. App'x
235 (4th Cir. 2013) (unpublished per curiam) ("[T]rustees frequently liquidate fully secured
property for the benefit of the secured creditor where the trustee is authorized to recover his costs
of disposal of the property pursuant to § 506(c).").

The Application of the Trustee, and any subsequent sale motion, however, I believe
would fail to explain or disclose any negotiated "carve outs" with the [Interested Party] to allow
undisclosed % of the sale proceeds that would normally be paid on perfected liens to instead go
to unsecured claims, presumably to increase the likelihood that the court would approve the
subsequent  MOT for sale, and said Motion proposes a modification of the § 724(b) distribution
scheme.

Under the Trustee's proposed modified § 724(b) distribution scheme, the sale proceeds
should first satisfy the perfected 1/14/2019 lien on the residence.

The Trustee fails to disclose proposed payment amount $____ in Trustee's administrative
expenses, his commission, the fees and expenses of his professionals, realtor and/or auctioneer
fees and expenses, and closing costs.

The Trustee fails to disclose what __% of the sale would pay the liens held by the
Interested Parties.

The undisclosed potential __% carve out of the Interested Parties liens would be used to
pay priority unsecured claims in full with the remainder disbursed pro rata among the general
unsecured creditors.

Due to the amounts of the Huntington Beach Gables HOA creditor claim, at best an
Interested Party,  (Money Judgments recorded in 2019 of over $561,000.00) and the HOUSER
BROS CO unsecured potential claim ($50,000.00) would get the vast majority of the funds

distributed to the other unsecured claimants would also receive some [unknown] dividend on their claims.

Anything left after the modified § 724(b) distributions would go to the Debtor's estate. Distributions pursuant to § 724(b), both as codified and as modified by the Trustee, raise a question about the payment of a debtor's (or the Debtor's) homestead exemption, as the statute [does not] mention exemptions at all.   See In re Christensen, 561 B.R. 195, 213 (Bankr. D. Utah 2016), aff'd sub nom. Jubber v. Bird (In re Bird), 577 B.R. 365 (B.A.P. 10th Cir. 2017) The Court may take note that there is an apparent tension between § 724 and the clear intent of § 522, which allows debtors to exempt property to assist in their fresh start."); COLLIER ¶ 724.03[3]

"If this DEBTOR'S HYPOTHETICAL tax lien in question is an IRS lien that encumbers the debtor's state law homestead, applying section 724(b) is not straightforward."). However, as previously stated, Debtor does not have any IRS tax liens.

The Chapter 7 Trustee ordered and received a Certified Copy of Debtors July 9, 2021, DOC 1, on 7/22/2022, DOC 145.

However, Debtor testified under oath at the first Meeting of Creditors with 341(a), held on August 18, 2021, DOC 5, that Debtors July 9, 2021, DOC 1, Chapter 7 Petition [was not] accurate and debtor would be filing Amended Schedules.

Debtors FIRST AMENDMENT Amended Schedule A/B, FIRST AMENDMENT Amended Schedule C, was filed September 22, 2021, DOC 16.

Prior to the Houser Bros MOT objecting to debtors homestead exemption hearing July 21, 2022, brought by Interested Party Houser Bros Co dba Rancho Del Rey Mobilehome Estates, who has no recorded judgments, unpaid claims or liens against debtor), Motion Objecting to Debtor's Claimed Homestead DOC 95, (Debtor's filed and Recorded pre-petition Declared Homestead DOC 74)

Debtor believes the bankruptcy court was under the impression that the Chapter 7 Trustee
intended for his June 30, 2022, joinder, DOC 128, to play a role in allowing the sale without
payment of the Debtor's homestead exemption.

It appears the Trustee may have taken the position that the Trustee's Joinder DOC 128
was only relevant to any net proceeds to the Debtor's estate after the payment of claims pursuant
to Trustee's potentially undisclosed modification of the § 724(b) distribution scheme.

Since the Trustee did not expect a great deal of net proceeds to go to the Debtor's estate,
the Trustee downplayed to Debtor the importance of the Joinder and to the Hon. Erithe A. Smith.

The Trustee's Joinder DOC 128,  did not argue points and despite the lack of explicit
statutory guidance, the Trustee's position appeared to be silent, in that distributions pursuant to §
724(b), even as modified by a Trustee to pay general unsecured creditors in addition to (and,
other than his own expenses, instead of) the priority claimants that § 724(b) normally benefits,
[are not] subject to the Debtor's homestead exemption.

Since California opted out of the federal exemptions in the Bankruptcy Code, state law
generally controls the analysis of exemptions.

Under California law, a debtor who properly records her Article 5 homestead declaration
while residing at the subject property, is entitled to her declared homestead and the additional
benefits debtor is also automatically entitled to of the Article 4 automatic homestead exemption
and its protections against a forced sale.   In re Kelley, 9th Cir.BAP (Cal.)2003, 300 B.R. 11.

There is a long-standing precedent in California of construing exemptions liberally. In re
Rolland, Bkrtcy.C.D.Cal.2004, 317 B.R. 402

("The North Carolina Supreme Court has cautioned that 'provisions which restrict a
debtor's access to her exemptions should be construed narrowly.'
Thus, debtors have long been 'allowed a great deal of flexibility in claiming and maintaining
their exemptions' under the state's law." (quoting Household Fin. Corp. v. Ellis, 107 N.C. App.
262, 266 (1992), aff'd 333 N.C. 785 (1993))).

Given the importance of the California homestead exemption in providing shelter to debtors and their families, see Cook, 2003 WL 21790296, at *2 ("The language of the California homestead exemption statute suggests that its purpose is to secure debtors and their families the shelter of a homestead."), it is not surprising that it "is a favorite of the law and will be sustained whenever possible," In re Bryant, Ch. 7 Case No. 94-10476, slip op. at 4 (Bankr. W.D.N.C. Feb. 2, 1995) (citing Pence v. Price, 211 N.C. 707 (1937)).

When other courts have considered the interplay of carve outs, § 724(b), and/or exemptions, the results have not been consistent, except in the inconsistency in results and rationales.  Some courts conclude that carve outs of a secured creditor's proceeds for distributions to unsecured creditors do not implicate a debtor's exemptions. E.g., In re Stark, Ch. 7 Case No. 8-20-70948, 2020 WL 5778400, at *2 (Bankr. E.D.N.Y. Sept. 25, 2020), rev'd Stark v. Pryor (In re Stark), No. 20-CV-4766 (E.D.N.Y. June 28, 2022) ("[T]he funds generated for the benefit of the estate by a chapter 7 trustee pursuant to potentially an [undisclosed] [carve-out] agreement potentially applicable in this case are not attributable to a debtor's equity interest in a homestead, or are they [not] attributable to the trustee's exercise of his powers to negotiate with the Certificate of Title Perfected Holder, of the 30-year Security Interest and Promissory Note perfected on the face of the Department of Housing & Community Development Certificate of Title to gain some benefit for the estate.").

In re Bunn-Rodemann, 491 B.R. 132, 136 (Bankr. E.D. Cal. 2013) ("To the extent that a creditor elects to pay a portion of the sales proceeds subject to its lien as an 'investment payment' for the bankruptcy estate to conduct a short-sale of this Debtor's  Property, such monies of the creditor are not assets in which the Debtor may claim an exemption.").

Similarly, some courts hold that distributions pursuant to § 724(b) are not subject to a debtor's exemptions, e.g., Grochocinski v. Laredo (In re Laredo), 334 B.R. 401, 415 (Bankr. N.D. Ill. 2005) (holding that the IRS's lien (pursuant to § 522(c)(2)(B)) and the priority claims described in § 507(a)(1)–(7) (pursuant to § 724(b)) are superior to the debtors' homestead

exemption), and allow a § 724(b) sale even when a [trustee's costs] are the only priority claims
that will potentially be paid.

Some courts do not see a problem with combining carve outs and § 724(b) as it appears
the Debtor's believes the future Trustee's Motion to Sell Debtor's home will attempt. E.g.,
Reeves, 2011 WL 841238, at *3 ("The key point is lengthy commentary by Debtor: is the
Trustee's attempt at a carve out for the benefit of unsecured creditors really for the benefit of a
hypothetical lien held by the IRS, [as stated this Debtor does not have any IRS liens] not from a
creditor who would be subject to the debtor's exemption." (citing In re World Health Alts., Inc.,
344 B.R. 291, 297 (Bankr. D. Del. 2006))).

Other courts reach the opposite conclusions in each of these situations. While carve outs
are frequently used in bankruptcy, they are not universally allowed to defeat debtors'
exemptions. See, e.g., In re Anderson, 603 B.R. 564, 570–71 (Bankr. W.D. Va. 2019) (refusing
to allow carve out of sale proceeds of property owned tenancy by the entireties for the benefit of
individual unsecured creditors); In re Wilson, 494 B.R. 502, 506 (Bankr. C.D. Cal. 2013) ("It
does not matter how funds are generated by the estate through a Section 363 sale, including if
derived from a 'tip' [a/k/a carve out] from Bank of America or Wachovia so that they will not
have to undertake a foreclosure proceeding under California law.
Funds derived from these sales are property of the estate and are subject to valid exemptions.").

Some courts hold that distributions pursuant to § 724(b) are subject to a debtor's
exemptions. See, e.g., In re Selander, 592 B.R. 729, 735 (Bankr. W.D. Wash. 2018) ("Though
cloaked in a subordination agreement, effectively the Trustee fails to explain an attempt to do
more than his claim of the ability to pull exempt property back into the estate and surcharge the
exemption.

The Debtor prays and respectfully requests this Court  agree this is not a result Congress
intended with the enactment of § 724(b).")   Although as pointed out above, some courts raise
questions about a trustee using § 724(b) solely to pay his own fees and expenses. E.g., Sheehan
v. Posin, Ch. 7 Case No. 11-CV-160, 2012 WL 1413020, at *5 n.1 (N.D. W. Va. Apr. 23, 2012)

(suggesting that the bankruptcy court below could examine whether a sale that only paid administrative costs was "an attempt by the trustee to churn property worthless to the estate just to increase fees" (quoting In re K.C. Mach. & Tool Co., 816 F.2d 238, 246 (6th Cir. 1987))); Oakland Cnty. Treasurer v. Allard (In re Kerton Indus.), 151 B.R. 101, 101–02 (E.D. Mich. 1991) (holding that a sale pursuant to § 724(b) that only resulted in the payment of administrative expenses related to the sale did not benefit the bankruptcy estate); see In re Fialkowski, 483 B.R. 590, 594 (Bankr. W.D.N.Y. 2012)

"The full scope of § 724(b) would best be understood in a case in which there are pre-petition priority unsecured claims that would benefit from the administration of the collateral.".

In re Christensen, the case thoroughly examines the relevant issues and rejects the combination of § 724(b) and a carve out. While in the context of a Chapter 7 trustee's application for compensation, Christensen involves two bankruptcy cases with liens that exceed the value of the debtors' properties, proposed carve outs of the IRS's liens, attempts to use § 724(b) to pay a trustee's fees and costs, and no proposed distribution on the debtors' exemptions. 561 B.R. at 197–98.

Relying on the Handbook for Chapter 7 Trustees prepared by the Office of the United States Trustee, the Christensen case concludes that the proposed sales were not mandatory due to the lack of equity in the properties. Id. at 203–05.  Since the Bankruptcy Code did not require the trustee to sell the properties, the trustee needed to show a benefit to the unsecured creditors of the debtors' estates to support his fee applications. Id. at 205–06.
The Trustee could not, largely because Christensen concludes that the funds carved out of the sale proceeds were subject to the debtors' homestead exemptions. Id. at 210–11

("Carve-outs are not a means for secured creditors to dictate payments to other creditors. The Trustee and the IRS cannot, simply by agreement, defeat junior lien interests or the Debtors' homestead exemptions, nor can a stipulation between the Trustee and the IRS bind the Court with respect to questions of law." (footnote omitted)).

The Utah court decided the trustee's agreement with the IRS was a sham that was not really intended to benefit the unsecured creditors of the debtors but instead to allow the IRS to offer a "tip" to the trustee for liquidating the debtors' property, noting that the IRS would also be a significant beneficiary of the distribution to the unsecured creditors. Id. at 212 ("[T]he provision that the tip [a/k/a the carve out] will go to unsecured creditors allows the trustee to come before the court armed with the argument that in administering this asset, he is fulfilling his statutory duty by benefitting unsecured creditors, thereby insulating the arrangement from scrutiny.

This argument is facile and belies the true nature and purpose of the transaction."). See Christensen, 561 B.R. at 214.  Christensen also notes that the arrangement between the IRS and the trustee would allow the IRS to obtain a result it could not outside of bankruptcy, as 26 U.S.C. § 6334(a)(13)(B) "specifically exempts a taxpayer's principal residence from levy." Id. at 205 n.40. Section 724(b) does not provide any additional support for the proposal "because properly exempted property is not subject to the provisions of § 724." Id. at 213.

See Christensen, 561 B.R. at 214.  Christensen forcefully and persuasively rejects a trustee's sale that combines a carve out and § 724(b).  In addition, Christensen is one of the few cases discussed in it's order that even mentions the impact of the Supreme Court's holding in Law v. Siegel, 571 U.S. 415 (2014), on the issues at play, and, in its Bird opinion affirming Christensen, the Bankruptcy Appellate Panel for the Tenth Circuit provides the most thorough examination of Law in this context.

In the course of holding that bankruptcy courts cannot surcharge a debtor's exemption for bad faith conduct, Law notes that subsection (k) of the Bankruptcy Code's exemption statute says exempted property is "not liable for payment of any administrative expense." Id. at 420–22 (quoting § 522(k)).

There are "two narrow exceptions" to that "general rule," but both of the statutory exceptions relate to the costs of avoiding a transfer and were not at issue in Law. Id. at 422 n.2.

The Court then recalls its previous observation that § 522 balances "the difficult choices that exemption limits impose on debtors with the economic harm that exemptions visit on

creditors," id. at 426–27 (quoting Schwab v. Reilly, 560 U.S. 770, 791 (2010)), and adds that
"[t]he same can be said of the limits imposed on recovery of administrative expenses by
trustees," id. at 427.

While the factual situation here concerning Debtor jas not yet reached this analysis,
Debtor believes it is important and distinguishable from the one before the Court in Law, "it
would nonetheless have the same effect—to deprive [the Debtor] of [her] homestead exemption
[ ] on a basis other than one enumerated in the Code." Bird, 577 B.R. at 386.   Law holds that a
debtor cannot be deprived of a homestead exemption to pay administrative expenses even when a
bankruptcy court found that a trustee had to incur over $500,000 in attorney's fees due to the
debtor's fraud. **Law, 571 U.S. at 420.**

As in Bird/Christensen, the Trustee's current Application before this court and potential
subsequent Motion to Sell, is not based on any allegation of misbehavior by the Debtor. See
Bird, 577 B.R. at 386 ("Debtors in these cases do not stand accused of any fraudulent or
contemptuous behavior."). Law does allow that state law could provide for the disallowance of
an exemption created by the state, 571 U.S. at 425 (citing In re Sholdan, 217 F.3d 1006, 1008
(8th Cir. 2000); COLLIER ¶ 522.08[1]–[2]).  Trustee did not assert any state law basis for
ignoring the Debtor's homestead exemption other than the Trustee's Joinder DOC 128, which
hypothetically, did not believe was necessary to allow his subsequent proposed modified
distributions pursuant to § 724(b), in a Motion to Sell.

Given the lack of an explicit statutory basis facing the Trustee subsequent Motion to Sell,
and potential payment of administrative expenses pursuant to § 724(b), not being subject to a
debtor's exemptions seems questionable at best after Law. See Christensen, 561 B.R. at 214 ("[I]t
is inconsistent with § 522(k) if exempted property is subject to distribution under § 724(b) and
used to pay administrative expenses.").

Finally, the Debtor asks this Court to consider the Trustee's Application to hire a Broker
proposal and contract attached to the Motion, in light of the Debtors pending Motion for

Reconsideration overruling Interested Party Houser Bros MOT Obejcting to Debtors
Homeostead Exemption in a home she purchased and resides in since November 2018,
one of the primary purposes of bankruptcy: the offer of a fresh start to the Debtor. See Cent. Va.
Cmty. Coll. v. Katz, 546 U.S. 356, 363–64 (2006) ("Critical features of every bankruptcy
proceeding are the exercise of exclusive jurisdiction over all of the debtor's property, the
equitable distribution of that property among the debtor's creditors, and the ultimate discharge
that gives the debtor a 'fresh start' by releasing him, her, or it from further liability for old
debts." (citing Loc. Loan Co. v. Hunt, 292 U.S. 234, 244 (1934))); Hunt, 292 U.S. at 244 ("One
of the primary purposes of the Bankruptcy Act is to 'relieve the honest debtor from the weight of
oppressive indebtedness, and permit him to start afresh free from the obligations and
responsibilities consequent upon business misfortunes.' " (quoting Williams v. U.S. Fid. & Guar.
Co., 236 U.S. 549, 554–55 (1915))).

Rhe Trustee's Motion, fails to discuss "any negative impact on the Debtor from the sale
of her home or how this Application and subsequent MOT to Sell,  assists the Debtor with her
"fresh start."

Moreover, the Debtor respectfully wishes to inform this Court that the Debtors attempts to sell
her home since 2019, Houser Bros Co holding debtor "hostage" under an unprosecuted 1/2/2019,
Unlawful Detainer Case filed by Houser Bros Co against a 11/1/2018, bona fide purchaser for
value of a 2014 Manufactured Home, would have received an even better version of the Trustee's
potential picture of a "type of fresh start" if Debtor had been allowed to sell her home on her
own without filing bankruptcy.

If the court approves any version of Trustee's Application and subsequent Motion To
Sell, before the Honorable Erithe A. Smith is permitted to consider debtors Motion for
Reconsideration on September 22, 2022, DOC 157, the Debtor at least 60 years old, would begin
her "fresh start" in need of a new home while still subject to significant liens.

Debtor believes the burden of a Trustee's 724(b) disguised proposal would actually be shifted to
the Debtor, see Christensen, 561 B.R. at 214 ("[D]ebtors may be burdened with tax debt that

could have been satisfied from the property—in effect, they could also be saddled with the **administrative expenses of this case.").** SEE Trustee's May 12, 2022, Motion to Employ Danning, Gill, Israel, & Krasnoff, LLP, Nunc Pro Tunc to January 27, 2022,  DOC 92, after Debtor sent Trustee a Text Message in February 2022, inquiring why the Trustee has not submitted an Application to the Bankruptcy Court to employ General Counsel for a Chapter 7 Trustee and Bankruptcy Attorney for almost 30 years.

Despite the Trustee's insistence to the contrary, the Debtor does not see this Application to Employ a Broker to sell debtor's personal residence since 2018 supporting the Debtor's fresh start.

Debtor suggest here, a hypothetical Trustee's proposal that potentially could arise her, would not benefit the Debtor's estate and would violate the principle that trustees should not administer property solely for the benefit of themselves.

Any potential carve outs and novel distribution scheme solve the benefit to the estate problem, but the proposal only works if the court ignores the September 22, 2022, Debtor's Motion for Reconsideration DOC 157, sustaining interested parties objection to debtors homestead exemption (for reasons that the Trustee did not explain in his joinder). DOC 128.

Given the strong protection of exemptions in California, particularly the homestead exemption, and the Supreme Court's instruction about the limited reasons for paying administrative expenses with exempt property, which are not present in this case, the court believes the Debtor's exemptions deserve more respect than the Trustee premature Application to Employ a Broker provides.

In addition, Congress created a precise scheme for distributions pursuant to § 724(b) that differs from the normal priorities applied in almost all bankruptcy cases, and it is not appropriate for the Trustee to create a new version of that distribution scheme by agreement of certain creditors or otherwise.

Adding general unsecured creditors to the § 724(b) distribution scheme would be a significant rewrite of the statutory language.

If the debtors objection to this Application is viewed as an adjunct of the potential Motion to Sell and the Trustee's overall subsequent proposal, the respectfully asks this Court to broadly consider this IN PRO PER and the reasons discussed above.
 The Trustee filed the the Joinder separately from (and prior to) this Motion, and even though the Trustee's Joinder DOC 128, appeared noncontroversial on its face, this debtor respectfully asks this Court to allow Debtors Motion for Reconsideration Hearing set on September 22, 2022, DOC 200, to be considered by the Honorable Erithe A. Smith.

Several courts have considered and overruled similar objections. See Fontana, 2015 Bankr. LEXIS 3771, at *3–4 (citing In re Ruppel, 368 B.R. 42, 44 (Bankr. D. Or. 2007); In re Quezada, 368 B.R. 44, 47 (Bankr. S.D. Fla. 2007); In re Vandeventer, 368 B.R. 50, 54 (Bankr. C.D. Ill. 2007)).

These cases make a distinction between an exemption not applying to certain types of claims or creditors, on the one hand, and disallowing the exemption altogether, on the other. Id. (citations omitted); see also Christensen, 561 B.R. at 213 (noting that property remaining liable for certain claims does not mean that an exemption is disallowed (citing In re Covington, 368 B.R. 38, 40 (Bankr. E.D. Cal. 2006))).

Since the property in question in Debtors Motion for Reconsideration DOC 157, may still be exempt (except as to certain claims/creditors), the Court should deny Trustee's Application to Employ a Broker as premature and any attempts to begin to administer it.

Ruppel, Quezada, Vandeventer, and Covington all examine changes to § 522 pursuant to the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), Trustee did not provide a state-specific reason to deny the Debtor's exemption in his Joinder DOC 128.

Executed this 30th day of August 2022, at Huntington Beach, CA., County of Orange.

Respectfully,

*Jamie Lynn Gallian*

JAMIE LYNN GALLIAN

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
16222 Monterey Ln. Unit 378 Huntington Beach, CA 92649

A true and correct copy of the foregoing document entitled (*specify*): Declaration of Jamie Lynn Gallian in Support of Opp
To Contempt of Court For Violating The Automatic Stay §363.

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 09/24/2024 , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☑ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 09/24/2024 | JOSEPH CLARK | *Joseph Clark* |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

ADDITIONAL SERVICE INFORMATION (if needed):

## 1. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")

- **Bradford Barnhardt**  bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com
- **Aaron E. DE Leest**  adeleest@marshackhays.com, adeleest@marshackhays.com,alinares@ecf.courtdrive.com
- **Robert P Goe**  kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goeforlaw.com
- **Jeffrey I Golden (TR)**  lwerner@go2.law, jig@trustesolutions.net;kadele@go2.law;C205@ecfcbis.com
- **D Edward Hays**  ehays@marshackhays.com, ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com
- **Brandon J. Iskander**  biskander@goeforlaw.com, kmurphy@goeforlaw.com
- **Eric P Israel**  eisrael@danninggill.com, danninggill@gmail.com;eisrael@ecf.inforuptcy.com
- **Shantal Malmed**  shantal.malmed@gmlaw.com, cheryl.caldwell@gmlaw.com
- **Laila Masud**  lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com
- **Mark A Mellor**  mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com
- **Valerie Smith**  claims@recoverycorp.com
- **United States Trustee (SA)**  ustpregion16.sa.ecf@usdoj.gov

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*December 2012*                                          *Page 5*

0109